# UNITED STATES DISTRICT COURT

ALEXANDER GUZMAN on behalf of herself
and all others similarly situated,
99 Oak Street
Avenel, New Jersey 07001 -1850

Plaintiff

vs.

HILLCREST DAVIDSON AND ASSOCIATES
715 North Glenville Drive,
Suite 450
Richardson, TX 75081
Telephone: (866) – 524 – 9866
Fax: (972) – 346 – 6870

and

JOHN DOES 1-25, are fictitious names of
individuals and business alleged for the purpose of
substituting names of defendants whose identities
will be disclosed in discovery and should be made
parties to this action.

Civil Case Number: _____

CIVIL ACTION

CIVIL ACTION CLASS ACTION

COMPLAINT AND DEMAND FOR JURY

TRIAL

## FOR THE DISTRICT OF NEW JERSEY

## COMPLAINT FOR A CIVIL CASE

1

**Plaintiff, Alexander Guzman hereby Demand A Jury and now submits within this Complaint his Request**

I. **The Parties to This Complaint**

    **A. The Plaintiff(s)**

        ALEXANDER GUZMAN
        99 Oak Street
        Avenel, New Jersey 07001 -1850

    **B. The Defendant(s)**

        *Defendant No.: 1*

            HILLCREST DAVIDSON AND ASSOCIATES
            715 North Glenville Drive,
            Suite 450
            Richardson, TX 75081
            Telephone: (866) – 524 – 9866
            *Fax: (972) – 346 – 6870*

        *Defendant No.: 2*

        *JOHN DOES 1-25,* are fictitious names of individuals and business alleged for the purpose of substituting names of defendants whose identities will be disclosed in discovery and should be made parties to this action.

2

███████████████████████████████████████████

## COMPLAINT FOR DAMAGES AND INJUNCTIVE AND DECLARATORY RELIEF

███████████████████████████████████████████

███████████████████████████████

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331. This is an action for violations of 15 U.S.C. § 1692 et seq. [Federal question]. *See:* **15 U.S.C. § 1692** ("An action to enforce any liability created by this title may be brought in any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, within one year from the date on which the violation occurs."). In United States law, **federal question jurisdiction** is the subject-matter jurisdiction of United States federal courts to hear a civil case because the Plaintiff has alleged a violation of the United States Constitution, federal law, or a treaty to which the United States is a party. The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1441 provides that a Defendant or Plaintiff can remove to federal district court any action filed in state court that the Plaintiff/ Plaintiff's or Defendant / Defendants could have brought in federal court in the first instance. Although Plaintiff characterizes this action as involving "the mere presence of a federal issue," it actually is based, at least

3

in part, on the enforcement of a right of action created by federal statute. Thus, there is no question that claims alleging violations of the FDCPA arise under federal law and, therefore, may be filed in and removed to federal district court.

Article III of the United States Constitution permits federal courts to hear such cases, so long as the United States Congress passes a statute to that effect. However, when Congress passed the Judiciary Act of 1789, which authorized the newly created federal courts to hear such cases, it initially chose not to allow the lower federal courts to possess federal question jurisdiction for fear that it would make the courts too powerful. The Federalists briefly created such jurisdiction in the Judiciary Act of 1801, but it was repealed the following year, and not restored until 1875. The statute is now found at 28 U.S.C. § 1331: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

Unlike diversity jurisdiction, which is based on the parties coming from different states, federal question jurisdiction no longer has any amount in controversy requirement—Congress eliminated this requirement in actions against the United States in 1976, and in all federal question cases in 1980. Therefore, a federal court can hear a federal question case even if no money is sought by the plaintiff.

To meet the requirement of a case "arising under" federal law, the federal question must appear on the face of the plaintiff's complaint. There has been considerable dispute over what constitutes a "federal question" in these circumstances, but it is now settled law that the plaintiff cannot seek the jurisdiction of a federal court merely because it anticipates that the defendant is going to raise a defense based on the Constitution, or on a federal statute. This "well-pleaded complaint" rule has been criticized by legal scholars, but Congress has so far chosen not to change the law, although the Supreme Court has made clear it is free to do so.

4

*AN ACT* concerning debt collection practices and supplementing P.L.1960, c.39 (C.56:8-1 et seq.).

*BE IT ENACTED* by the Senate and General Assembly of the State of New Jersey:

1. This act shall be known and may be cited as the "New Jersey 8 Fair Debt Collection Practices Act." 9 10

2. The Legislature hereby finds and declares that: 11

a. The ability of consumers to obtain credit depends upon the ability of creditors to collect just and owing debts.

b. There is substantial evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors.

c. Abusive, deceptive and unfair collection practices may constitute invasions of personal privacy, and may result in adverse social consequences such as family instability, the loss of jobs or employment opportunity and damage of reputation in the community; additionally, such conduct may undermine the public confidence which is essential to the continued functioning of the banking and credit system and sound extensions of credit to 23 consumers.

d. Consumers will benefit through new a State law to complement the federal statutes governing abusive, deceptive and unfair collection practices, which will provide greater incentive for debt collectors to act honestly and fairly with due regard to the rights of debtors, and greater accountability when they fail to do so.

e. It is the purpose of this act to prohibit debt collectors from engaging in abusive, deceptive and unfair collection practices in the collection of debts arising from consumer transactions,

5

and the provisions hereof should be liberally construed

    3. As used in this act:

        **"Consumer"** means a natural person.

        **"Consumer reporting agency"** means any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages, in whole or in part, in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility for the purpose of preparing or furnishing consumer reports.

        **"Consumer transaction"** means a transaction pursuant to which a consumer becomes obligated to pay for goods, services or anything of value, including money, used primarily for personal, family or household purposes. A consumer transaction shall not include leases of real property or the membership in, or acquisition of 5 interests in, common interest communities as defined in section 1 of 6 P.L.1989, c.9 (C.2A:62A-12).

    **"Debt"** means any obligation or alleged obligation to pay money directly or indirectly arising out of a consumer transaction. The term "debt" shall include, but is not limited to a check, as defined in subsection f. of section N.J.S.12A:3-104, given in a consumer transaction.

    **"Debtor"** means a person who owes or allegedly owes a debt arising out of a consumer transaction.

    **"Debt collector"** means any person who by any direct or indirect action, conduct, or practice, collects or attempts to collect for another, a debt that is owed or due, or alleged to be owed by or due

6

from a debtor in this State as a result of a consumer transaction. The term **"debt collector"** includes, but is not limited to, an attorney, and any person working under the direction or control of an attorney, who regularly collects or attempts to collect, directly or indirectly, a debt that is owed or due, or alleged to be owed by or due from a debtor in this State as a result of a consumer transaction , unless the attorney or other person working under the direction or control of an attorney is attempting to collect a debt in their own name for legal services rendered.

`The term **"debt collector"** includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. A creditor that uses a billing service to render bills, invoices, and statements of account on behalf of the creditor shall not be deemed to use any name other than his own solely as a result of such use.

The term **"debt collector"** does not include: any officer or employee of the United States or any state, or agencies or instrumentalities of any state, to the extent that collecting or attempting to collect a debt is in the performance of any official duties including a private entity contracted to act on behalf of a state agency or instrumentality in the collection of a state debt; any person collecting or attempting to collect any debt that was not in default at the time it was obtained by such person, or any person while serving or attempting to serve legal process on any other person in connection with the judicial enforcement of any debt.

**"Person"** means an individual, corporation, trust, partnership, 6 incorporated or unincorporated association or any other legal entity.

a. A debt collector shall not communicate with a debtor in connection with the collection of any debt under any of the following circumstances, unless the debtor has given prior written consent, which

7

4. Venue is proper in this district under 28 U.S.C. §1391(b)(2) because the acts of the Defendant(s) that give rise to this action, occurred in substantial part, in this district. *See J.C. Driskill, Inc. v. Abdnor, 901 F.2d 383, 386 (4th Cir.1990) ("A cause of action for breach of a duty imposed by statute or case law, and not by contract, is a tort action."). See: Lesher v. Law Offices of Mitchell N. Kay, PC 650 F. 3d 993 - Court of Appeals, 3rd Circuit, 2011* [ finding law firm debt collection letter violated § 1692e because firm name and logo printed at the top of the letter "falsely implied that an attorney, acting as an attorney, was involved in collecting" the debt][Summary of this case from Benner v. Bank of Am., N.A.]

Because the FDCPA is a remedial statute, we construe its language broadly so as to effect its purpose. *Brown v. Card Serv. Ctr.,* 464 F.3d 450, 453 (3d Cir.2006) (citations omitted). Accordingly, we analyze communications from lenders to debtors from the perspective of the "least sophisticated debtor." *Id.* at 454. "The basic purpose of the least-sophisticated [debtor] standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd. This standard is consistent with the norms that courts have traditionally applied in consumer-protection law." *Id.* at 453 (quoting *Clomon v. Jackson,* 988 F.2d 1314, 1318 (2d Cir.1993)). "`Laws are made to protect the trusting as well as the suspicious.'" *Brown,* 464 F.3d at 453 (quoting *Federal Trade Comm'n v. Standard Educ. Soc'y,* 302 U.S. 112, 116, 58 S.Ct. 113, 82 L.Ed. 141 (1937)).

## PLAINTIFF'S LEGAL CLAIMS

5. The Plaintiff, Alexander Guzman(s) on behalf of herself and all others similarly situated (hereinafter "Plaintiff") hereby alleges against the above named Defendant, HILLCREST DAVIDSON AND ASSOCIATES, ( "HILLCREST DAVIDSON AND ASSOCIATES"), JOHN DOES 1-25 ("Defendants") their employees, agents, and successors (collectively "Defendants") the following:

**6.**

## PRELIMINARY STATEMENT

6. Plaintiff brings this action for damages and declaratory federal claim relief arising because the Defendant(s) engaged in unlicensed debt collection activity in violation of New Jersey law, they also violated the Fair Debt Collection Pratices Act §§ 15 U.S.C. 1692 – 1692o, 1692e,1692e(5) 1692e(10) and the New Jersey Fair Debt Collection Pratices Act [N.J.S.A 45:18-1] ; that Defendants' unlicensed debt collection activities constituted  fraud; and that Defendants were unjustly enriched as a result of their unlawful activity. Thus Defendants actions are a crime and fall under New Jersey's

Professional Services Corporation Act ("PSCA"), N.J.S.A. 14A:17-1 *et seq.* and by way of criminal

sanctions for unconscionable conduct in connection with debt collection activities, which sanctions are

found in N.J.S.A. 2C:21-19. That provision prohibits, *inter alia,* usurious rates of interest and other

unlawful collection practices such as "mak[ing] a false or inaccurate or incomplete statement of any ...

credit terms." N.J.S.A. 2C:21-19e.


This Complaint clearly avers that, through  litigation activity and other debt collection

means, that HILLCREST DAVIDSON AND ASSOCIATES, tries to collect consumer debts.

HILLCREST DAVIDSON AND ASSOCIATES, directly collects on debts that it purchases in default.

*See Memo at 15 n. 9; see H.B. 1324, 2007 Leg. Sess., Econ. Matters Comm. Floor Rep., at 3 (Md.*

*2007)* ("Creditors have taken to selling defaulted receivables at a discount to collectors who are not

licensed under Maryland law, although they are subject to the federal Fair Debt Collection Practices

Act.").


The Fair Debt Collection Practices Act prohibits "debt collector[s]" from making false or

misleading representations and from engaging in various abusive and unfair practices. The Act says, for

example, that a "debt collector" may not use violence, obscenity, or repeated annoying phone calls, 15

U. S. C. § 1692d; may not falsely represent "the character, amount, or legal status of any debt," §

1692e(2)(A); and may not use various "unfair or unconscionable means to collect or attempt to collect"

a consumer debt, § 1692f. Among other things, the Act sets out rules that a debt collector must follow

for "acquiring location information" about the debtor, § 1692b; communicating about the debtor (and

the debt) with third parties, § 1692c(b); and bringing " legal actions," § 1692i. The Act imposes upon

"debt collector[s]" who violate its provisions (specifically described) " civil liability" to those whom

they, e. g., harass, mislead, or treat unfairly. § 1692k. The Act also authorizes the Federal Trade

10

Commission (FTC) to enforce its provisions. § 1692l (a). The Act's definition of the term "debt collector" includes a person "who regularly collects or attempts to collect, directly or indirectly, debts owed [to] . . . another." § 1692a(6). And, it limits "debt" to consumer debt, i. e., debts "arising out of . . . transaction[s]" that "are primarily for personal, family, or household purposes." § 1692a(5).

Defendant is in violations of §§ 15 U.S.C. 1692 – 1692o, 1692e,1692e (5) and 1692e(10) of the Fair Debt Collection Practices Act (hereinafter "FDCPA"), the New Jersey Fair Debt Collection Practices Act [N.J.S.A 45:18 -1], the New Jersey's Professional Services Corporation Act ("PSCA"), [N.J.S.A. 14A:17-1 *et seq}.,* the New Jersey's Consumer Fraud Act, *[ N.J.S.A.56:8-1, et seq. ("NJCFA")],* the New Jersey Rev Stat § 2C:21-19 b, d, e and f [Wrongful credit practices and related offenses] and as required under the New Jersey Consumer Finance Licensing Act ("NJCFLA") [§§ 17:11C-1 et seq.] and N.J.S.A. 17:16G-I(c)(2) which prohibits "debt collectors / debt adjusters" from engaging in abusive, deceptive and unfair practices.

*See: Chulsky v. Hudson Law Offices, PC 777 F. Supp. 2D 823 - Dist. Court, D. New Jersey, 2011 ( ...* The only current New Jersey civil law directly referencing debt collectors is a bond statute, the Collection Agencies Act, NJSA 45:18-1, et seq., which is designed to protect creditors from agencies who misappropriate client funds; it is not a consumer protection statute*...);*

*See: Finch v. LVNV FUNDING LLC 71 A. 3d 193, 212 Md. App. 748 - Md: Court of Special Appeals, 2013 ( ...* reasons, we hold that a judgment entered in favor of an unlicensed debt collector constitutes a ... to be licensed as collection agencies when they collect consumer debts through civil... The Hilco court concluded consumers who are sued by unlicensed debt collectors, in violation of ... *)* and

*See: Heintz v. Jenkins 514 US 291, 115 S. Ct. 1489, 131 L. Ed. 2d 395 - Supreme Court, 1995*

( The issue before us is whether the term "debt collector" in the Fair Debt Collection Practices Act, 91 Stat. 874, 15 U. S. C. §§ 1692-1692o (1988 ed. and Supp. V), applies to a lawyer who "regularly," through litigation, tries to collect consumer debts. The Court of Appeals for the Seventh Circuit held that it does. We agree with the Seventh Circuit and we affirm its judgment.*)*

## DEFINITIONS

7. As used in reference to the FDCPA, the terms "creditor," "consumer," "debt," and "debt collector" are defined in § 803 of the FDCPA and 15 U.S.C. § 1692a.

## PARTIES

8. The FDCPA, 15 U.S.C. § 1692 et seq., which prohibits certain debt collection practices provides for the initiation of court proceedings to enjoin violations of the FDCPA and to secure such equitable relief as may be appropriate in each case.

9. Plaintiff is a natural person, a resident of Essex County, New Jersey and is a "Consumer" as defined by 15 U.S.C. § 1692a(3).

10. HILLCREST DAVIDSON AND ASSOCIATES maintains a location at 715 North Glenville Drive, Suite 450, Richardson, TX 75081.

11. JOHN DOES 1-25, are fictitious names of individuals and business alleged for the purpose of substituting names of defendants whose identities will be disclosed in discovery and should be made

12

parties to this action.

12. Upon information and belief,  HILLCREST DAVIDSON AND ASSOCIATES uses the mail, telephone, and facsimile and regularly engages in business the principal purpose of which is to attempt to collect debts alleged to be due another **"WITHOUT"** the necessary New Jersey state licenses to do this debt collection actions or activities within the state of New Jersey.

███████████████████████████████████████████████████

## **PLAINTIFF'S EXHIBITS A THROUGH C**

███████████████████████████████████████████████████

### **Plaintiff's Exhibit (A)**

**Please see attached letters sent to the Plaintiff, Alexander Guzman, by Defendant, HILLCREST DAVIDSON AND ASSOCIATES dated: April 27th , 2018, May 30th, 2018 and July 24th , 2018 as Plaintiff's Exhibit (A). As to were the Defendant(s), HILLCREST DAVIDSON AND ASSOCIATES clearly identified themselves as debt - collectors within the state of New Jersey via USPS mail delivery.**

### **Plaintiff's Exhibit (B)**

**Please see attached letter sent to the Plaintiff,  Alexander Guzman, by the State of New Jersey Department of the Treasury Division of Revenue and Enterprise Services pertaining to the legal requirements under New Jersey Fair Debt Collections Practices Act [N.J.S.A. 45:18-1] as**

13

**Plaintiff's Exhibit (B). Were the courts will see that  Defendant(s) are not  licensed or bonded within the state of New Jersey to act as a debt – collector within the state of New Jersey**

## Plaintiff's Exhibit (C )

**Please see attached licensure printout from State of New Jersey Department Of  Banking & Insurance, which is showing that both Defendants are not licensed  as required under the New Jersey Consumer Finance Licensing Act ("NJCFLA") [§§ 17:11C-1 et seq.] as Plaintiff's Exhibit (C).**

**Plaintiff,  Alexander Guzman now cities: *Cf. Jeandron v. Bd. of Regents of Univ. Sys. of Md., 510 Fed.Appx. 223, 227 (4th Cir.2013)* ("A court may take judicial notice of information publicly announced on a party's web site, so long as the web site's authenticity is not in dispute and 'it is capable of accurate and ready determination.' ") (quoting Fed.R.Evid. 201(b))**

13. HILLCREST DAVIDSON AND ASSOCIATES is a "Debt Collector" as that term is defined by 15 U.S.C. § 1692(a)(6) " When they **(1) stated within their own letters that, "this is a communication from a debt collector.**

### "Please refer back to Plaintiff's Exhibits A through C"

and **(2) when the Defendant(s) used written letters, when they attempted to collect consumer debts on behalf of Protect Your Home from the Plaintiff, Alexander Guzman, WITHOUT being licensed or bonded  in the State of New Jersey."** *See:*  15 U.S.C. § § 1692 – 1692o, §1692e(5) and §1692e(10) of the FDCPA.

14

14. HILLCREST DAVIDSON AND ASSOCIATES is acting as a "Debt Adjusters" as that term is defined under the New Jersey Consumer Finance Licensing Act ("NJCFLA") [§§ 17:11C-1 et seq.] also as stated within their letters dated April 27th ,2018 that, *"Our office staff is available to assist you the processing of payment Mondany throught Friday from 9:00am – 8:00pm CST. We accept payment by most methods including credit card, debit card, check or money order. To insure that you receive proper credit to your account, please include a reference to the number 909499 with your payment."* and within Defendants letter dated April 27th , 2018 it states, *" We look forward to being able to resolve this matter in a mutually acceptable manner."* and *" Please be advised that the above- referenced account has been assigned to our agency for the purposes of collection." " It is our goal to resolve this matter in a convenient manner. If you would like to clear this matter up, please take this opportunity to pay your account through on of the following payment options:"* Thus the Defendants are acting as Assignee of Protect Your Home, without being licensed in the State of New Jersey as a Debt Adjuster and as stated within each one of their letters to the Plaintiff, Alexander Guzman.

## 15. **Assignment for the Benefit of Creditors**

An assignment for the benefit of creditors (ABC) is a business liquidation device available to an insolvent debtor as an alternative to formal bankruptcy proceedings. In many instances, an ABC can be the most advantageous and graceful exit strategy. This is especially true where the goals are (1) to transfer the assets of the troubled business to an acquiring entity free of the unsecured debt incurred by the transferor and (2) to wind down the company in a manner designed to minimize negative publicity and potential liability for directors and management.

## General assignment

A **general assignment or assignment** is a concept in bankruptcy law that has a similar meaning, due to common law ancestry, in different jurisdictions, but wide dispersion in practical application. The "assignment for the benefit of creditors", also known as an ABC or AFBC is an alternative to bankruptcy, which is a "general assignment"/"assignment" concept.

# The United States

In the United states, a general assignment or an assignment for the benefit of creditors is simply a contract whereby the insolvent entity ("Assignor") transfers legal and equitable title, as well as custody and control of its property, ***to a third party ("Assignee")*** in trust, to apply the proceeds of sale to the assignor's creditors in accord with priorities established by law.

An assignment for the benefit of creditors is a relatively well-established common law tool and is one alternative to a bankruptcy. An assignment for the benefit of creditors is designed to save time and expense by concluding the affairs of a bankrupt company. The assignment for the benefit of creditors is a state form of bankruptcy action versus a federal form of bankruptcy action. The assignment for the benefit of creditor's process is similar in character to a Chapter 7 bankruptcy and parallels some of the same procedures, but is not an actual "bankruptcy" in the form the word is used in the United States.

## Mechanism

The assignment for the benefit of creditors is a common law contract between the board of directors and the assignee in which the board "assigns" the assets and liabilities of the company to the assignee, a third party. The assignment for the benefit of creditors contract is usually recorded the

16

public record at a town, a city, a county or a state level. Each state will differ on recording requirements for the assignment for the benefit of creditors contract.

The physical filing of the assignment usually occurs after: the board of directors has spoken with local insolvency counsel; a board of directors authorization of some nature has been enacted; an appropriate assignee chosen; and the contract has been written. The assignee's primary goal is to try to make the creditors whole. The assignee performs duties similar to a trustee under federal bankruptcy. The assignee has a similar, if not equivalent, fiduciary role as the bankruptcy trustee. The assignee has the primary responsibility to: liquidate the assets of the company; vetted creditor claims; and issue a dividend to the creditors. The creditors are the assignee's top priority, not shareholders. Shareholders by definition have a residual claim on assets once all creditors are satisfied.

The assignee, once the assignment process is completed, issues a dividend. The dividend is derived from the sale of assets, collection of receivables, recovery of the bankrupt company's assets and cash. Certain creditors may or may not receive a dividend. The assignee's hope is to provide a one-to-one redemption of the creditor's claims; however, this depends on the amount of cash an assignee can marshal in the liquidation process.

The claims process is similar to a standard bankruptcy action in which creditors submit claims to the assignee for review and acceptance. The acceptance and vetting of claims is an important process to ensure that no one creditor has overstated their claim. There are rare occasions in which an assignee may issue a non-cash dividend as part of the overall dividend to creditors on their claims, but a dividend of this type is not common. If all the creditors are made whole, shareholders would then have a claim on the remainder of the dividend. This holds true only if there are no other classes of equity that have priority senior to the shareholders.

The order of creditor's claims usually follows the normal bankruptcy order prescribed in a

17

Chapter 7 bankruptcy, generally secured, and unsecured in descending order. The assignee, depending on the specific state law may use Chapter 7, Title 11, United States Code as needed. Neither the federal bankruptcy court nor a state court usually oversee this process, however the assignee is subject in most cases to a look back provision within the state the assignment took place.

A Federal Bankruptcy Court judge in a Chapter 7 bankruptcy must approve the sale of the bankrupt company's assets, thus adding time and expense on to the entire liquidation process. The assets sold in an assignment for the benefit of creditor process do not usually require a judge's intervention. It is this removal of the court from the liquidation process which increases the speed of the assets sold in an assignment process. This is one substantial difference from a regular bankruptcy.

## Creditors

Secured and unsecured creditors constitute the creditor body. Both secured and unsecured creditors are ahead of shareholders as noted earlier. A secured creditor is a creditor, who has a priority claim on an asset or assets of a company. A lien on the specific asset or assets places the secured creditor's claim ahead of the unsecured creditor. Once a secured creditor is satisfied, the unsecured creditor is then the next priority. This is again the normal order of priority in a bankruptcy.

## Secured creditor influence

If there has been a determination by company management and interested parties such as a secured creditor that even after restructuring, a "going concern" may still not viable. A secured creditor or group of secured creditors frequently may encourage the company's senior management to pursue this liquidation mechanism. Secured creditor(s) may encourage this type of action to relieve themselves of the legal costs and risks associated with the foreclosure and sale of its collateral. One specific risk a secured creditor wants to avoid is preference or the perception of preference in the liquidation process (see fraudulent transfer).[*citation needed*]

18

In situations where the liquidation value of the assets exceeds a secured creditor's lien, the assignee is not normally required to obtain the consent of a secured creditor or any other creditor prior to the assignment process. Cooperation of the secured creditor may however affect the assignee's ability to liquidate an asset. An assignee in practice may obtain the consent of the secured creditors in advance of the assignment to ensure that the assignee can liquidate the asset or assets in a timely manner without a secured party stopping or holding up the assignment process. Secured party consent in this case is optional, not necessary.[*citation needed*]

In situations where the liquidation value of the assets is less than a secured creditor's lien, the assignment process can be done, however a vast number of legal questions need to be reconciled before the assignment process can possibly be initiated. There unfortunately is no concise answer in this particular situation.[*citation needed*]

Secured creditors may in certain instances assume the senior management roles within the bankrupt company, however noted earlier this situation occurs when the secured creditor(s) have foreclosed on their lien. Large secured creditors again may influence the decision making process, but that secured creditor can not enter into that contract on behalf of the bankrupt company. Only the bankrupt company's senior management and/or board of directors have the power to do an assignment.

## *Dividend*

The dividend is hopefully the payout that the assignee issues, once all creditors' claims have been vetted and all the assets have been sold. The assignee hopes to generate enough cash to provide a one for one redemption of a creditor's claims. This is the hope the reality varies vastly, depending on the price the assets fetched when sold. Most dividends are in the form of cash back to the creditor, but not necessarily all. There may not even be a dividend in certain instance, thus no creditor receives any payment. There is no way to determine the cash value of an asset in the assignment process, regardless

19

of past estimates. Tangible assets cash value can usually, but not always, be reasonably estimated. Intangible assets such as intellectual property or processes are much more difficult to evaluate

## The New Jersey Legal Requirements For Debt Adjusters Within The State

### *[New Jersey Consumer Finance Licensing Act ("NJCFLA") [§§ 17:11C-1 et seq.]*

The New Jersey Consumer Finance Licensing Act ("NJCFLA") requires that persons engaged in business as "consumer lenders" obtain certain licenses. N.J. Stat. Ann. § 17:11C-3. A "'consumer lender' means a person licensed, or a person who should be licensed, under [§§ 17:11C-1 et seq.] to engage in the consumer loan business." Id. § 17:11C-2. Any person "directly or indirectly engaging . . . in the business of buying, discounting or endorsing notes, or of furnishing, or procuring guarantee or security for compensation in amounts of $50,000 or less, shall be deemed to be engaging in the consumer loan business." Id. "No person shall engage in business as a consumer lender or sales finance company without first obtaining a license or licenses under this act." Id. § 17:11C-3.

### *New Jersey's debt adjuster statute, N.J.S.A. 17:16G-1c(2)*

New Jersey's debt adjuster statute, N.J.S.A. 17:16G-1c(2), provides, in relevant part: "[t]he following persons shall not be deemed debt adjusters: (a) an attorney~at-law of the State who is **not** principally engaged as a debt adjuster..." (emphasis added). Pursuant to N.J.S.A. 17:16G-1(c)(2) a debt adjuster "is a person who acts or offers to act for consideration as an intermediary between a debtor and

his creditors for the purposes of settling, compounding, or otherwise altering the terms of payment of any debts of the debtor."

15. John Does 1-25, are fictitious names of individuals and business alleged for the purpose of substituting names of defendants whose identities will be disclosed in discovery and should be made or possibly may become parties to this action.

## CLASS ACTION ALLEGATIONS

16. Plaintiff brings this action as a state wide class action, pursuant to Rule 23 of the Federal Rules of Civil Procedure (hereinafter "FRCP"), on behalf of herself and all New Jersey consumers and their successors in interest (the"Class"), who were sent debt collection letters and/or notices from the Defendants, which are in violation of the FDCPA, as described in this Complaint.

17. This Action is properly maintained as a class action. The Class is initially defined as:

• All New Jersey consumers who were sent letters and/or notices from HILLCREST DAVIDSON AND ASSOCIATES concerning a debt originally owed to Protect Your Home which included the alleged conduct and practices described herein.

• The class definition may be subsequently modified or refined.

• The Class period begins one year to the filing of this Action.

21

18. The Class satisfies all the requirements of Rule 23 of the FRCP for maintaining a class action:

• Upon information and belief, the Class is so numerous that joinder of all members is impracticable because there may be hundreds and/or thousands of persons who were sent debt collection letters and/or notices from the Defendant that violate specific provisions of the FDCPA. Plaintiff is complaining of a standard form letter and/or notice. (See Exhibit A, and Plaintiff's other attached exhibits except that the undersigned attorney has, in accordance with Fed. R. Civ. P. 5.2 redacted the financial account numbers and/or personal identifiers in an effort to protect Plaintiff's privacy);

• There are questions of law and fact which are common to the Class and which predominate over questions affecting any individual Class member. These common questions of law and fact include, without limitation:

a.) Whether the Defendant(s) violated various provisions of the FDCPA including but not limited to: 15 U.S.C. §§ 1692g et seq., and 1692e et seq as well as other Federal and State Laws. Federal - Question Juridiction presents it

b.) Whether Plaintiff and the Class have been injured by the Defendants' conduct;

c.) Whether Plaintiff and the Class have sustained damages and are entitled to restitution as a result of Defendants' wrongdoing and if so, what is the proper measure and appropriate statutory formula to be applied in determining such damages and restitution; and

22

d.) Whether Plaintiff and the Class are entitled to declaratory and/or injunctive relief

• Plaintiff's claims are typical of the Class, which all arise from the same operative facts and are based on the same legal theories and actions committed by the Defendant's. Plaintiff avers that he and "each class member reasonably relied upon HILLCREST DAVIDSON AND ASSOCIATES direct and indirect representations that each was licensed and permitted to operate legally in the state of New Jersey as a debt collector or as an debt adjuster. Yet, the Defendant, HILLCREST DAVIDSON AND ASSOCIATES is not licensed as a debt collection agency in the State of New Jersey, pursuant to the Collection Agencies Act, [N.J.S.A. 45:18-1, *et seq.] Id.*

• Plaintiff has no interest adverse or antagonistic to the interest of the other members of the Class.

• Plaintiff will fairly and adequately protect the interest of the Class.

• A Class Action is superior to other methods for the fair and efficient adjudication of the claims herein asserted. Plaintiff anticipates that no unusual difficulties are likely to be encountered in the management of this class action.

• A Class Action will permit large numbers of similarly situated persons to prosecute their common claims in a single forum simultaneously and without the duplication of effort and expense that numerous individual actions would engender. Class treatment will also permit the

23

adjudication of relatively small claims by many Class members who could not otherwise afford to seek legal redress for the wrongs complained of herein. Absent a Class Action, class members will continue to suffer losses of statutory protected rights as well as monetary damages. If Defendants' conduct is allowed to proceed without remedy, it will continue to reap and retain the proceeds of their ill-gotten gains.

• Defendants have acted on grounds generally applicable to the entire Class, thereby making appropriate final conjunctive federal claim relief or corresponding declaratory relief with respect to the Class as a whole.

## *STATEMENT OF FACTS*

19. Plaintiff is at all times to this lawsuit, a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

20. At some time prior to or before April 27th , 2018, Plaintiff allegedly incurred a financial obligation to PROTECT YOUR HOME via contractual agreement, for which was changed or updated by PROTECT YOUR HOME representative.

21.The PROTECT YOUR HOME obligation arose out of a transaction, in which money, property, goods, insurance or services, which are the subject of the transaction, are primarily for personal, family or household purposes.

22. The PROTECT YOUR HOME obligation did not arise out of a transaction that was for non-personal use.

23. The PROTECT YOUR HOME. obligation did not arise out of a transaction that was for business use.

24.The PROTECT YOUR HOME obligation is a "debt" as defined by 15 U.S.C. § 1692a(5).

24

25. PROTECT YOUR HOME  is a "creditor" as defined by 15 U.S.C. § 1692a(4).

26. 26.Prior to April 27th, 2018, the obligation PROTECT YOUR HOME was purchased by and/or sold to  HILLCREST DAVIDSON AND ASSOCIATES.

27. At the time the PROTECT YOUR HOME obligation was purchased by and/or sold to HILLCREST DAVIDSON AND ASSOCIATES, the obligation was in default.

28. On or before April 27[h], 2018, the PROTECT YOUR HOME obligation was referred to CAVALRY PORTFOLIO for the purpose of debt collection.

29. At the time the PROTECT YOUR HOME obligation was referred to HILLCREST DAVIDSON AND ASSOCIATES the PROTECT YOUR HOME obligation was changed by a new customer contractual agreement.

30. At the time the PROTECT YOUR HOME obligation was referred to HILLCREST DAVIDSON AND ASSOCIATES the PROTECT YOUR HOME obligation was in default pursuant to the terms of the agreement creating the obligation and/or by operation of law.

31. Defendants caused to be delivered to Plaintiff a letter dated April 27th, 2018, which was addressed to Plaintiff. A copy of said letter is annexed hereto as Exhibit A, which is fully incorporated herein by reference.

32. The April 27th, 2018 letter was sent to Plaintiff in connection with the collection of the PROTECT YOUR HOME obligation.

33. The April 27th, 2018 letter is a "communication" as defined by 15 U.S.C. § 1692a(2).

34. The April 27th, 2018letter is the initial written communication sent from Defendant to the Plaintiff, Alexander Guzman

35.Upon receipt, Plaintiff read the April 27th, 2018 letter.

36. The April 27th, 2018 letter contained the Defendant's contact information at the top of the letter:

## HD

### HILLCREST DAVIDSON
#### AND ASSOCIATES

715 N Glenville Dr. #450 • Richardson, TX \5081 • Phone: 866. 524. 9866 • Fax: 973.346.6870 •

37. The April 27th , 2018 letter stated in part:

" Please be advised that the above- referenced account has been assigned to our agency for the purposes of collection." " It is our goal to resolve this matter in a convenient manner. If you would like to clear this matter up, please take this opportunity to pay your account through on of the following payment options:"

"Our office staff is available to assist you the processing of payment Mondany throught Friday from 9:00am – 8:00pm CST. We accept payment by most methods including credit card, debit card, check or money order. To insure that you receive proper credit to your account, please include a reference to the number 909499 with your payment."

" We look forward to being able to resolve this matter in a mutually acceptable manner."

38. The April 27th , 2018 letter also stated in part:

**UNLESS YOU,  WITHIN 30 DAYS AFTER THE RECEIPT OF THIS NOTICE, DISPUTE THE VALIDITY OF THIS DEBT, OR ANY PORTION THEREOF,IS DISPUTED, OUR  OFFICE WILL OBTAIN VERIFICATIONON THE DEBT OR A COPY OF THE JUDGMENT  AGAINST YOU AND MAIL YOU A COPY OF SUCH  JUDGMENT OR VERIFICATION.  IN ADDITION, UPON YOUR WRITTEN REQUEST WITHIN 30-DAY PERIOD, WE WILL PROVIDE YOU WITH THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR, IF DIFFERENT FROM THE CURRENT CREDITOR. PLEASE BE ADVISED THAT THIS COMMUNICATION IS FROM A DEBT COLLECTOR IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

39. At the center of the front side of the April 27th , 2018 letter it stated the following:

**UNLESS YOU,  WITHIN 30 DAYS AFTER THE RECEIPT OF THIS NOTICE, DISPUTE THE VALIDITY OF THIS DEBT, OR ANY PORTION THEREOF,IS DISPUTED, OUR  OFFICE WILL OBTAIN VERIFICATIONON THE DEBT OR A COPY OF THE JUDGMENT  AGAINST YOU AND MAIL YOU A COPY OF SUCH  JUDGMENT OR VERIFICATION.  IN ADDITION, UPON YOUR WRITTEN REQUEST WITHIN 30-DAY PERIOD, WE WILL PROVIDE YOU WITH THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR, IF DIFFERENT FROM THE CURRENT CREDITOR. PLEASE BE ADVISED THAT THIS COMMUNICATION IS FROM A DEBT COLLECTOR IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

40. At the top center of the front side of the  April 27th , 2018  letter it stated:

" Please be advised that the above- referenced account has been assigned to our agency for the purposes of collection." " It is our goal to resolve this matter in a convenient manner. If you would like to clear this matter up, please take this opportunity to pay your account through on of the following payment options:"

**Option 1:** Pay securely and confidentially online at www.payhda.com. Note: In order to pay online, you will need to have your Hillcrest Davidson Account #, and either the last four digits of your SSN or your zip code.

**Option 2:** Send check or money order to the address listed above. Note: Please reference your Hillcrest Davidson Account # in the memo section of your  check or money order.

**Option 3:**  Call us toll free at (866) 524 – 9866 to discuss payment options via Check by phone, debt card or credit card.

41. Section 1692g(a)(3)of the FDCPA requires to debt collector to:

Within five days after the initial communication with a consumer in connection with the collection of any debt... send the consumer a written notice containing ---

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector.

42. A dispute of a debt, to be effective, in the Third Circuit, must be in writing. *Graziano v. Harrison, 950 F.2d 107, 112 (3d Cir. 1991). Caprio v. Healthcare Revenue Recovery Group, 709 F.3d 142 (3d Cir. March 1, 2013).*

43. HILLCREST DAVIDSON AND ASSOCIATES, should have knew or should have known that their actions violated the FDCPA and other Federal and State laws, by failing to be license and bonded with the state of New Jersey For example: [N.J.S.A. 45:18 – 1] before send April 27th , 2018 letter to an New Jersey resident like Plaintiff, Alexander Guzman, HILLCREST DAVIDSON AND ASSOCIATES should have known that it is an New Jersey state  license requirement to do debt collection within the state of New Jersey, under [N.J.S.A. 45:18 – 1].

44. Defendants could have taken the steps necessary to bring their actions within compliance with the Fair Debt Collection Practices Act and *New Jersey Consumer Finance Licensing Act ("NJCFLA") [§§ 17:11C-1 et seq.],* as well as the New Jersey Fair Debt Collection Practices Act *[N.J.S.A. 45:18-1], the New Jersey's debt adjuster statute, N.J.S.A. 17:16G-1c(2)* and the *New Jersey's Professional Services Corporation Act ("PSCA"), N.J.S.A. 14A:17-1 et seq.*, but neglected to do so and failed to adequately review its actions to ensure compliance with the law, both Federal and State. Additionally, by this conduct, respondent acted as a debt adjuster without a license, is in clear violation of N.J.S.A. 17:16G-I(c)(2).

28

## POLICIES AND PRACTICES COMPLAINED OF

45. It is Defendants' policy and practice to send written collection communications, in the form annexed hereto as Exhibit A and A1, which violate the FDCPA, by inter alia:

(a) Using false, deceptive or misleading representations or means in connection with the collection of a debt; and

(b) Failing to obtain the required New Jersey state licenses prior to send out debt-collection notice pursuant to New Jersey Fair Debt Collection Practices Act *[N.J.S.A. 45:18-1],* New Jersey Consumer Finance Licensing Act *("NJCFLA") [§§ 17:11C-1 et seq.]* and sections 1692e(2)(a), 1692e(5), 1692e(10), and 1692f(1) of the FDCPA.

(c) Defendants' conduct violates section 15 U.S.C. § 1692e(5), which prohibits threatening "to take any action that cannot legally be taken." 15 U.S.C. § 1692e(5). Specifically, because Cavalry Portfolio Services, LLC  purchased Plaintiff's alleged debt without first acquiring the necessary state licenses to do so, Apothaker Scian P.C., et al 's attempt to collect the alleged debt *through litigation or* other *debt collection* means violates the FDCPA because Cavalry Portfolio Services, LLC , nor Apothaker Scian P.C., et al was not the lawful owner of the alleged debt, nor was either Defendant licensed or bonded as an Debt Collector or as a as an Debt Adjuster.

(d) Defendants' conduct violates section 15 U.S.C. § 1692e(10) which prohibits The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain

29

information concerning a consumer. Specifically, because the Defendants used deceptive means to collect or attempt to collect by filing an court complaint under Docket No.: L-004275 -17, when they were not licensed or bonded as an Debt Collector or as a as an Debt Adjuster within the state of New Jersey.

(e) Defendants' conduct violates section 15 U.S.C. § 1692f (1), which prohibits A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

1. The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law

(f) Defendants' conduct violates section 15 U.S.C. § 1692e(2)(a), which prohibits the false representation of the character, amount, or legal status of any debt; or. Specifically, because the Defendants used deceptive means to collect or attempt to collect by filing an court complaint under Docket No.: L-004275 -17, when they were not licensed or bonded as an Debt Collector or as a as an Debt Adjuster within  the state of New Jersey. As stated within Defendant's letter dated March 06th , 2017, it states the following verbiage: **" We understand that all of the account balance may not be repaid at this time. If some of the bill can be repaid, even if it is through a monthly payment plan, we would like to hear from you." " We work with our customers to find affordable repayment arrangements." "Please call us at (866) – 434 – 2995 to discuss your repayment options."** For which legal suggest that this Defendant can **(1)** act within the state of New Jersey as an Debt Adjuster and **(2)** by way of personal investigation done by the Plaintiff, Jean Shim, It is now know that both

Defendant's are not licensed with the state of New Jersey as Debt Adjusters to do any Debt Adjustment within the state of New Jersey.

(g) Defendants' conduct violates New Jersey's debt adjuster statute, N.J.S.A. 17:16G-1c(2)

Specifically, because the Defendants used deceptive means to collect or attempt to collect by sending April 27th , 2018 and other letters, when in fact they were not licensed or bonded as an Debt Collector or as a as an Debt Adjuster within the state of New Jersey. As stated within Defendant's letter dated April 27th , 2018, it states the following verbiage:

" Please be advised that the above- referenced account has been assigned to our agency for the purposes of collection." " It is our goal to resolve this matter in a convenient manner. If you would like to clear this matter up, please take this opportunity to pay your account through on of the following payment options:"

**Option 1:** Pay securely and confidentially online at www.payhda.com. Note: In order to pay online, you will need to have your Hillcrest Davidson Account #, and either the last four digits of your SSN or your zip code.

**Option 2:** Send check or money order to the address listed above. Note: Please reference your Hillcrest Davidson Account # in the memo section of your check or money order.

**Option 3:** Call us toll free at (866) 524 – 9866 to discuss payment options via Check by phone, debt card or credit card.

**UNLESS YOU, WITHIN 30 DAYS AFTER THE RECEIPT OF THIS NOTICE, DISPUTE THE VALIDITY OF THIS DEBT, OR ANY PORTION THEREOF,IS DISPUTED, OUR OFFICE WILL OBTAIN VERIFICATIONON THE DEBT OR A COPY OF THE JUDGMENT AGAINST YOU AND MAIL YOU A COPY OF SUCH JUDGMENT OR VERIFICATION. IN ADDITION, UPON YOUR WRITTEN REQUEST WITHIN 30-DAY**

31

**PERIOD, WE WILL PROVIDE YOU WITH THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR, IF DIFFERENT FROM THE CURRENT CREDITOR. PLEASE BE ADVISED THAT THIS COMMUNICATION IS FROM A DEBT COLLECTOR IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

"Our office staff is available to assist you the processing of payment Mondany throught Friday from 9:00am – 8:00pm CST. We accept payment by most methods including credit card, debit card, check or money order. To insure that you receive proper credit to your account, please include a reference to the number 909499 with your payment."

## PRIVACY STATEMENT

For which legal suggest that this Defendant can **(1)** act within the state of New Jersey as an Debt Adjuster and **(2)** by way of personal investigation done by the Plaintiff, Alexander Guzman , It is now know that both Defendant's are not licensed with the state of New Jersey as Debt Adjusters to do any Debt Adjustment within the state of New Jersey.

Pursuant to New Jersey's debt adjustment statute, N.J.S.A. 17:16G-l(a), "[n]o person other than a nonprofit social service agency or a nonprofit consumer credit counseling agency shall act as a debt adjuster." Although the statute prohibits debt adjustment for profit, N.J.S.A. 17:16G-1c(2)(a) exempts attorneys who are not principally engaged as debt adjusters. Respondent was principally engaged as a debt adjuster in New Jersey. Pursuant to N.J.S.A. 2C:21-19(f), acting as a debt adjuster without a

32

license, unless exempted from licensure, is a crime of the fourth-degree.

## "Please refer back to Plaintiff's Exhibit "A through C"

The courts will see that neither Defendant is licensed with the state of New Jersey as Debt Adjusters to do any Debt Adjustment within the state of New Jersey. A debt adjuster is defined in the Act as a person who either: (a) acts or offers to act for consideration as an intermediary between a debtor and his creditors for the purpose of settling, compounding, or otherwise altering the terms of payment of any debts of the debtor, or (b) who, to that end, receives money or other property from the debtor, or on behalf of the debtor, for payment to, or distribution among, the creditors of the debtor. The law goes on to provide that the following persons shall not be deemed to be debt adjusters: (a) an attorney-at-law of this state who is not principally engaged as a debt adjuster; (b) a person who is a regular, full-time employee of a debtor, and who acts as an adjuster of his employer's debts; (c) a person acting pursuant to any order or judgment of a court, or pursuant to authority conferred by any law of this state or the United States; (d) a person who is a creditor of the debtor, or an agent of one or more creditors of the debtor, and whose services in adjusting the debtor's debts are rendered without cost to the debtor; or (e) a person who, at the request of a debtor, arranges for or makes a loan to the debtor and who, at the authorization of the debtor, acts as an adjuster of the debtor's debts in the disbursement of the proceeds of the loan, without compensation for the services rendered in adjusting those debts. N.J.S.A. 17:16G-1(c).

Debt adjustment is a form of debt relief that allows a government, organization, corporation, or individual to repay a debt over a longer period of time and with smaller payment amounts than the lender and borrower originally agreed upon. It is an alternative to bankruptcy. Debt settlement is a form of individual debt adjustment.

46. On information and belief, Defendants have sent written communications in the form annexed hereto as Exhibit (A,) to at least 50 or more natural persons in the state of New Jersey within one year of this Complaint.

## *COUNT I*

33

## *FAIR DEBT COLLECTION PRACTICES ACT, 15 U.S.C. § 1692 et seq. VIOLATIONS*

47. Plaintiff, on behalf of herself and others similarly situated, repeats and re-alleges all prior allegations as if set forth at length herein.

48. Collection letters and/or notices, such as those sent by Defendants, are to be evaluated by the objective standard of the hypothetical "least sophisticated consumer."

49. The April 27th , 2018 and other letters fails to properly inform the least sophisticated consumer that to effectively dispute the alleged debt, such dispute must be in writing.

The least sophisticated consumer upon reading the April 27th , 2018 and other letters would be confused as to what he or she must do to effectively dispute the alleged debt.

51. The least sophisticated consumer wishing to dispute the alleged debt would be confused as to what steps he or she should take to notify Defendants of his or her dispute.

52. The least sophisticated consumer upon reading the instructions in the April 27th , 2018 and other letters would be misled into believing that if he or she wished to effectively dispute the alleged debt or any portion thereof, he or she may (1) notify Defendants by calling the telephone number(s) provided: or (2) write to Defendants at the address listed on the letter.

53. Defendants' instructions in the April 27th , 2018 and other letters would cause least sophisticated consumer to be unsure as to what he or she must do to effectively dispute the alleged

34

debt.

54. A dispute of a debt, to be effective, in the Third Circuit, must be in writing. *Graziano v. Harrison, 950 F.2d 107, 112 (3d Cir. 1991). Caprio v. Healthcare Revenue Recovery Group, 709 F.3d 142 (3d Cir. March 1, 2013).*

55. Defendants violated 15 U.S.C. §1692g(a)(3) by failing to effectively inform Plaintiff in the April 27th, 2018 and other letters, what he or she must do in order to dispute the alleged debt.

56. 56. Defendants violated 15 U.S.C. §1692e(10) by falsely representing and misleading Plaintiff into believing that if he wished to dispute the alleged debt or any portion thereof, that he may (1) notify Defendants by calling the telephone number(s) provided; or (2) write to Defendants at the address listed in the letter.

57. The April 27th, 2018 and other letters is misleading because the instructions can be read to have two or more meaning, which one is inaccurate. Plaintiff, Jean Shims poses to the Defendants, are you (1) an Debt Collector within the State of New Jersey or (2) an Debt Adjuster within the State of New Jersey within the letter dated April 27th, 2018 and other letters?

58. The April 27th, 2018 and other letters can be read to mean that the least sophisticated consumer may dispute the alleged debt by calling Defendants at the telephone number(s) provided.

## *COUNT II*

## *Violations of the New Jersey Fair Debt Collection Practices Act [N.J.S.A 45:18 -1] and New Jersey Consumer Finance Licensing Act ("NJCFLA") [§§ 17:11C-1 et seq.]*

35

59. Plaintiff allege that Defendants' conduct violates section 1692e(5), which prohibits threatening "to take any action that cannot legally be taken." 15 U.S.C. § 1692e(5).5 Specifically, because HILLCREST DAVIDSON AND ASSOCIATES purchased Plaintiff's alleged debt without first acquiring the necessary New Jersey State license to do so as either as **"an debt collector ."** [*New Jersey Fair Debt Collection Practices Act [N.J.S.A 45:18 -1]* or as **"an debt adjuster ."**[ N.J.S.A. 17:16G-1 et seq. (the Act), regarding the providing of debt adjustment services to New Jersey residents]. HILLCREST DAVIDSON AND ASSOCIATES attempt to collect the alleged debt violates the FDCPA because HILLCREST DAVIDSON AND ASSOCIATES was not the lawful owner of the alleged debt from Protect Your Home and because they did not have the necessary New Jersey State license when in fact they wrote to the Plaintiff, Aleaxander Guzman, letters dated April 27ʰ ,2018 and others., regarding the underline debt.

60. Plaintiff allege that Defendants' conduct violates section 1692e(5), which prohibits threatening "to take any action that cannot legally be taken." 15 U.S.C. § 1692e(5).5 Specifically, because HILLCREST DAVIDSON AND ASSOCIATES purchased Plaintiff's alleged debt without first acquiring the necessary New Jersey State license to do so as either as **"an debt adjuster"** [*New Jersey Consumer Finance Licensing Act ("NJCFLA") [§§ 17:11C-1 et seq.].* HILLCREST DAVIDSON AND ASSOCIATES attempt to collect the alleged debt violates the FDCPA because CHILLCREST DAVIDSON AND ASSOCIATES was not the lawful owner of the alleged debt and because they did not have the necessary New Jersey State license when in fact they wrote to the Plaintiff, Aleaxander Guzman, letters dated April 27ʰ ,2018 and others, regarding the underline debt.

36

## WHO IS A "DEBT COLLECTOR"

Basically, an FDCPA "debt collector" includes anyone who regularly collects debts after they have allegedly become delinquent as agent for their owner, as well as anyone who acquires debts for their own account after they have allegedly become delinquent. *Kimber v. Federal Financial Corp., 668 F.Supp. 1480 (M.D.Ala. 1987)*; *McKinney v. Cadleway Props., Inc., 548 F.3d 496 (7th Cir. 2008)*.

The above conclusion is based on the definition of "debt collector" is found in 15 U.S.C. §1692a(6), which must be read together with the definition of "creditor" in 15 U.S.C. §1692a(4). A "creditor" is "any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another." **A "debt collector" is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.**

*Please refer  back to Plaintiffs Exhibit (A) through (C)*

## *New Jersey Fair Debt Collection Practices Act [N.J.S.A 45:18 -1]*

No person shall conduct a collection agency, collection bureau or collection office in this state,

or engage therein in the business of collecting or receiving payment for others of any account, bill or other indebtedness, or engage therein in the business of soliciting the right to collect or receive payment for another of any account, bill or other indebtedness, or advertise for or solicit in print the right to collect or receive payment for another of any account, bill or other indebtedness, unless such person, or the person for whom he may be acting as agent has on file with the secretary of state sufficient bond as hereinafter specified.

███████████████████████████████████████████████████████

## *New Jersey Consumer Finance Licensing Act ("NJCFLA") [§§ 17:11C-1 et seq.]*

███████████████████████████████████████████████████████

The New Jersey Consumer Finance Licensing Act ("NJCFLA") requires that persons engaged in business as "consumer lenders" obtain certain licenses. N.J. Stat. Ann. § 17:11C-3. A "'consumer lender' means a person licensed, or a person who should be licensed, under [§§ 17:11C-1 et seq.] to engage in the consumer loan business." Id. § 17:11C-2. Any person "directly or indirectly engaging . . . in the business of buying, discounting or endorsing notes, or of furnishing, or procuring guarantee or security for compensation in amounts of $50,000 or less, shall be deemed to be engaging in the consumer loan business." Id. "No person shall engage in business as a consumer lender or sales finance company without first obtaining a license or licenses under this act." Id. § 17:11C-3.

61.  Plaintiff allege that Defendants' conduct violates section 1692e(2)(a), which prohibits a debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. 15 U.S.C. § 1692e (2) Specifically, because HILLCREST DAVIDSON AND ASSOCIATES purchased Plaintiff's alleged debt without first acquiring the necessary New

Jersey State licenses to do so as either as **"an debt adjuster"** [*New Jersey Consumer Finance Licensing Act ("NJCFLA") [§§ 17:11C-1 et seq.] or as "an debt collector" [New Jersey Fair Debt Collection Practices Act [N.J.S.A 45:18 -1].*

*See: Bradshaw v. Hilco Receivables, LLC,* 765 F.Supp.2d 719, 727 (D.Md.2011) - (applying Maryland law) (rejecting debt buyer's argument that it was confused whether a "passive" debt buyer must be licensed as a collection agency, and explaining that "DLLR issued an advisory notice clarifying its official position" on July 17, 2007).

*See, e.g., Harry Berenter, Inc. v. Berman, 258 Md. 290, 293, 265 A.2d 759 (1970). The Court of Appeals explained that:*

[I]f a statute requiring a license for conducting a trade, business or profession is regulatory in nature for the protection of the public, rather than merely to raise revenue, an unlicensed person **will not be given the assistance of the courts in enforcing contracts** within the provisions of the regulatory statute because such enforcement is against public policy

62. Plaintiff allege that Defendants' conduct violates section 1692e(2) (B), which prohibits (2) The false representation of – (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.

63. Plaintiff allege that Defendants' conduct violates section 1692e(10),which prohibits the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer. 15 U.S.C. § 1692e (10) Specifically, because HILLCREST DAVIDSON AND ASSOCIATES purchased Plaintiff's alleged debt without first acquiring the necessary New Jersey State licenses to do so as either as **"an debt adjuster"** [*New Jersey Consumer Finance Licensing Act ("NJCFLA") [§§ 17:11C-1 et seq.] or as "an debt collector" [New Jersey*

## *Fair Debt Collection Practices Act [N.J.S.A 45:18 -1].*

*See: Finch v. LVNV FUNDING LLC, 71 A. 3d 193 - Md: Court of Special Appeals 2013 Citing: [ Generally, a party that lacks a required license may not file an action in a Maryland court to enforce rights related to its unlicensed activities.]*

*See, e.g., Harry Berenter, Inc. v. Berman, 258 Md. 290, 293, 265 A.2d 759 (1970). The Court of Appeals explained that:*

[I]f a statute requiring a license for conducting a trade, business or profession is regulatory in nature for the protection of the public, rather than merely to raise revenue, an unlicensed person will not be given the assistance of the courts in enforcing contracts within the provisions of the regulatory statute because such enforcement is against public policy.

*Id. See also McDaniel v. Baranowski, 419 Md. 560, 583-87, 19 A.3d 927 (2011)* (reversing summary ejectment judgment entered against a tenant and in favor of an unlicensed landlord because "the purpose of the [landlord licensing] statute was to eliminate a perceived harm, rather than to build the public fisc....")] We shall hold that a rental property owner who does not possess a current license to operate the premises, is not entitled to utilize the summary ejectment procedures outlined in Section 8-401 of the Real Property Article upon a tenant's failure to pay rent, if the dwelling is located in a jurisdiction that requires owners to obtain such licenses. We shall further hold that the District Court judge did not err in determining that the tenant did not demonstrate actual loss or injury due to the rental property owner's failure to obtain a license for the premises, and was, thus, not entitled to damages pursuant to the Consumer Protection Act.

"In *Goldsmith v. Mfrs.' Liability I. Co., 132 Md. 283, 103 Atl. 627 (1918),* this Court stated (at p. 286 of 132 Md.):

"`* * * a contract entered into by an unlicensed person engaged in a trade, business or profession, required to be licensed, and made in the course of such trade, business or profession, can not be enforced by such person, if it appears that the license required by the statute is, in whole or in part, for the protection of the public, and to prevent improper persons from engaging in such trade, business or profession. If, however, the purpose of the statute is to raise revenue only, his right to enforce such contract is not defeated by the want of a license. * * *'

"It is manifest from the face of Secs. 515 and 516, as well as from the criminal sanctions provided,  that the statute is of a regulatory nature for the protection of the public, as Sec. 515 explicitly states, and not a revenue measure; thus, under the rule of the *Goldsmith* case, a contract prohibited by the statute would not be enforceable by the unlicensed party."

(232 Md. at 421-22, 194 A.2d at 105-06.)

### *IN THE MATTER OF APPLICATION OF JACKMAN, 761 A. 2d 1103 - NJ: Supreme Court 2000*

Court stated:

"We now hold that Jackman did engage in the unauthorized practice of law from 1991 to 1998, that the nature of his practice did not obviate the need to be licensed in New Jersey, and that he was responsible for that conduct notwithstanding his reliance on the advice of the managing partner of the New Jersey law firm in which he was employed." "We agree with the RG. 304 Review Panel that Jackman's unauthorized practice of law reflects negatively on the candidate's fitness for admission." "However, Jackman's certification for admission already has been delayed since July 1999." " We hold, therefore, that delaying Mr. Jackman's certification for admission until January 2, 2001 shall serve sufficiently to underscore to the candidate the need to appreciate and abide by the laws, rules, and procedures governing attorneys admitted to the bar of this State."

Jackman's practice of law at Sills Cummis for almost seven years without a New Jersey license was in direct conflict with the plain terms of *Rule* 1:21-1(a). There is no exception from our licensure

41

requirement for an attorney who practices law as an associate at a New Jersey law firm while holding only a license issued by another state. Nor is there an exception from our licensure requirement if one engages in transactional law only and does not enter appearances in court. The facts here compel one conclusion: Jackman practiced law in New Jersey for almost seven years handling legal matters implicating the rights and remedies of clients. That practice was unauthorized.

Other states with similar licensing requirements have likewise concluded when confronted with comparable circumstances. *See Kennedy, supra,* 561 *A.*2d at 200 (holding attorney practicing law in Maryland on a regular basis, advising clients and preparing legal documents, for several years without Maryland license engaged in unauthorized practice of law); *In re Roel,* 3 *N.Y.*2d 224, 165 *N.Y.S.*2d 31, 144 *N.E.*2d 24 (1957), *appeal dismissed,* 355 *U.S.* 604, 78 *S.Ct.* 535, 2 *L.Ed.*2d 524 (1958) (holding attorney licensed to practice law in Mexico engaged in unauthorized practice of law when he counseled clients in his New York office on Mexican law); *Ginsburg v. Kovrak,* 392 *Pa.* 143, 139 *A.*2d 889(Pa.), *appeal dismissed,* 358 *U.S.* 52, 79 *S.Ct.* 95, 3 *L.Ed.*2d 46 (1958) (holding that state licensure requirement was "wholly clear" when concluding that attorney practicing law in Pennsylvania without license engaged in unauthorized practice of law).

We, too, find New Jersey's requirement of a plenary license entirely clear under R. 1:21-1. The importance of our public policy assuring the lay public that only those properly approved for bar admission in New Jersey may render legal services here is underscored by the Legislature's designation of the unauthorized practice of law as a disorderly person's offense or a crime of the fourth degree. N.J.S.A. 2C:21-22.

## *COUNT III*

42

-

**Please refer  back to Plaintiffs Exhibit (A) through ©**

███████████████████████████████████████████████

## *New Jersey's Professional Services Corporation Act ("PSCA"), N.J.S.A. 14A:17-1 et seq.*

███████████████████████████████████████████████

No professional corporation shall engage in any business other than the rendering of the professional services for which it was specifically incorporated; and no foreign professional legal corporation shall engage in any business in this State other than the rendering of legal services of the type provided by attorneys-at-law; provided, that nothing in this act or in any other provisions of existing law applicable to corporations shall be interpreted to prohibit such corporation from investing its funds in real estate, mortgages, stocks, bonds **or any other type of investments**, or from owning real or personal property necessary for, or appropriate or desirable in, the fulfillment or rendering of its professional services.

### *New Jersey's Consumer Fraud Act, [ N.J.S.A.56:8-1, et seq.("NJCFA")] Claim*

65. Plaintiff's NJCFA claim relates to HILLCREST DAVIDSON AND ASSOCIATES 's purchase and attempt to collect on Plaintiff's defaulted debt initially owed to the Protect You Home sold to HILLCREST DAVIDSON AND ASSOCIATES. To be sure, Plaintiff does dispute the validity of his underlying debt to Protect Your Home.  That initial issuer of credit is clearly subject to the NJCFA.

*See Lemelledo v. Beneficial Management Corp. of America,* 150 N.J. 255, 696 A.2d 546 (1997). Thus, Plaintiff's claim against Cavalry Portfolio Services, LLC and Apothaker Scian P.C. should  raises the issue of whether a debt buyer — "a purchaser or assignee of defaulted debt" — is subject to the NJCFA for

its alleged misrepresentations in connection with its debt collection practices. *Kuhne v. Cohen & Slamowitz, LLP,* 579 F.3d 189, 194 (2d Cir.2006) (defining "debt buyer").

N.J.S.A. 56:8-2 (emphasis added). The statute defines "merchandise" as "any objects, wares, goods, commodities, services or anything offered, directly or indirectly to the public for sale." N.J.S.A. 56:8-1(c). And, it defines "sale" as "any sale, rental or distribution, offer for sale, rental or distribution or attempt directly or indirectly to sell, rent or distribute." N.J.S.A. 56:8-1(e). Finally, the Act defines "advertisement" as "the attempt directly or indirectly by publication, dissemination, solicitation, indorsement or circulation or in any other way to induce directly or indirectly any person to enter or not enter into any obligation or acquire any title or interest in any merchandise or to increase the consumption thereof or to make any loan...." N.J.S.A. 56:8-1(a).

See attached **Plaintiff's Exhibit (B) and (C)** form New Jersey Department of Banking & Insurance and from the State of New Jersey Department of the Treasury Division Of Revenue and Enterprise Services P.O. Box 252 Trenton, New Jersey 08625- 0252, stating that Defendant,HILLCREST DAVIDSON AND ASSOCIATES "**Status:" "No records found**" Yet in the letters stated above as **Plaintiff's Exhibits (A)** that Defendant, HILLCREST DAVIDSON AND ASSOCIATES have stated within their letters that they are debt collectors and attempting to collect a debt on behalf of Protect Your Home or acting as debt adjusters without being properly licensed within the State of New Jersey.

## *COUNT IV*

## *New Jersey Rev Stat § 2C:21-19 b, d, f and e [Wrongful credit practices and related offenses] Violations by Defendant's*

New Jersey, further, regulates the activities of collection agencies by way of criminal sanctions

for unconscionable conduct in connection with debt collection activities, which sanctions are found in N.J.S.A. 2C:21-19. That provision prohibits, inter alia, usurious rates of interest and other unlawful collection practices such as "making a false or inaccurate or incomplete statement of any ... credit terms." N.J.S.A. 2C:21-19e.

66.  Plaintiff also allege that Defendants' conduct violates *New Jersey Rev Stat § 2C:21-19 b, d, f and e of New Jersey.* Because the FDCPA was enacted to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.SC. § 1692(e). Specifically, the FDCPA prohibits the use of any conduct the natural consequences of which is to harass, oppress, or abuse any person, 15 U.S.C. § 1692d, any false, deceptive, or misleading representations or means, 15 U.S.C. § 1692e,"the threat to take any action that cannot legally be taken." 15 U.S.C. § 1692e(5) and any unfair or unconscionable means, 15 U.S.C. § 1692f, to collect or attempt to collect any debt, because both Defendants are/were not licenses to do so in the state of New Jersey.  The FDCPA creates a private cause of action against debt collectors who violate its provisions. ***Brown v. Card Service Center, 464 F.3d 450, 453 (3d Cir.2006)*** (15 U.S.C. § 1692k) even when a party is not  licenses in the state as required by law.

In determining whether a communication from a debt collector violates the FDCPA, a court must analyze the debt collector's statements from the perspective of the "least sophisticated debtor," *id.* at 454; *Campuzano-Burgos v. Midland Credit Mgmt., 550 F.3d 294, 301 (3d Cir. 2008),* in order to protect "all consumers, the gullible as well as the shrewd." *Rosenau v. Unifund Corp., 539 F.3d 218, 221 (3d Cir.2008)* (quoting *Brown,* 464 F.3d at 454). Although the "least sophisticated consumer" standard is a low standard, it nonetheless "`prevents liability for bizarre or idiosyncratic interpretations

46

of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care.'" *Rosenau,* 539 F.3d at 221 (quoting *Wilson v. Quadramed Corp.,* 225 F.3d 350, 355 (3d Cir.2000)).  For the courts reference and Defendant's the law is stated here below:

### *New Jersey Rev Stat § 2C:21-19b, d , f and e [Wrongful credit practices and related offenses]*

(b.) Business of criminal usury. Any person who knowingly engages in the business of making loans or forbearances in violation of subsection a. of this section is guilty of a crime of the second degree and, notwithstanding the provisions of N.J.S. 2C:43-3, shall be subject to a fine of not more than \$250,000.00 and any other appropriate disposition authorized by N.J.S. 2C:43-2b.

(d.)Unlawful collection practices. A person is guilty of a disorderly persons offense when, with purpose to enforce a claim or judgment for money or property, he sends, mails or delivers to another person a notice, document or other instrument which has no judicial or official sanction and which in its format or appearance simulates a summons, complaint, court order or process or an insignia, seal or printed form of a federal, State or local government or an instrumentality thereof, or is otherwise calculated to induce a belief that such notice, document or instrument has a judicial or official sanction.

(e.) Making a false statement of credit terms. A person is guilty of a disorderly persons offense when he understates or fails to state the interest rate, or makes a false or inaccurate or incomplete statement of any other credit terms.

(f.) Debt adjusters. Any person who shall act or offer to act as a debt adjuster without a license as required by P.L.1979, c.16 (C.17:16G-1 et seq.), unless exempt from licensure pursuant to that act, shall be guilty of a crime of the fourth degree.

67. Congress enacted the FDCPA in part to eliminate abusive debt collection practices by debt collectors. Certain courts that have considered this issue have held in the affirmative. See *Fiorenzano v LVNV Funding, LLC, No. 11-178M, 2012 WL 2562415, at \*4-5 (D.R.I. June 29, 2012)* (holding that Plaintiff's allegation that LVNV violated section 1692e(10) by failing to register with the State of

47

Rhode Island as a debt collector under the Rhode Island Debt Collector Registration Statute was sufficient to state a claim under the FDCPA where the Rhode Island statute prohibited any person from acting as a debt collector in the state without first registering as such); *Russey v. Rankin, 911 F. Supp. 1449, 1459 (D.N.M. 1995)* (finding that "Defendant TCA violated 15 U.S.C. §§ 1692e, 1692e(5), 1692e(10) and 1692f by engaging in collection activity in [New Mexico] without a license," and granting plaintiff summary judgment on those claims); *Gaetano v. Payco of Wis., Inc., 774 F. Supp. 1404, 1414-15 (D. Conn. 1990)* (holding that plaintiff was entitled to summary judgment on her section 1692e(10) claim because "the Court finds deceptive the defendant's attempt to collect a debt when prohibited from doing so by Connecticut law").

## **PLAINTIFF'S INJUNCTIVE AND DECLARATORY RELIEF**

## **From Defendant's Debt-Collection Activates and Awarded Judgment**

68. Plaintiff seeks injunctive relief to prevent the continuation and recurrence of the challenged conduct, and to assure uniform standards by which Defendants will not seek collection from consumers knowingly and intentionally using false documentation or by continuing debt collection actions, without being licensed or bonded in the State of New Jersey, either as a Debt Collector or as a Debt Adjuster.

69. Plaintiff seeks injunctive federal claim relief from HILLCREST DAVIDSON AND ASSOCIATES as stated within each and every letter sent to the Plaintiff, Alexander Guzman, because HILLCREST DAVIDSON AND ASSOCIATES, due to the fact are not licensed or bonded in the State

48

of New Jersey when they sent thir letters in an attempt to collect upon a debt. Thus, any actions done within the state of New Jersey should be void because HILLCREST DAVIDSON AND ASSOCIATES was acting as Debt Collector's/ Debt Adjusters, WITHOUT, being licensed or bonded in the State of New Jersey, either as a Debt Collector or as a Debt Adjuster.

**"Please refer back to Plaintiff's Exhibits (A), (B), and (C)"**

As stated within the case: *__Finch v. LVNV FUNDING LLC, 71 A. 3d 193 - Md: Court of Special__*

*__Appeals 2013__*

Which states the following:

# A. Void Judgments

Our analysis must necessarily begin by examining the distinction between a void and voidable judgment. A void judgment "is a mere nullity, which [is] disregarded entirely, and could [be] attacked collaterally, and ... could [be] discharged by any other court of competent jurisdiction...." *Smith v. State,* 240 Md. 464, 474, 214 A.2d 563 (1965). A voidable judgment "is not a mere nullity, but only liable to be avoided by a direct attack and the taking of proper steps to have its invalidity declared. Until annulled, it has all the ordinary consequences of a legal judgment." *Id.*

Judgments are void as a matter of law in various circumstances. For example, a judgment is void if it was obtained by a "non-lawyer" through the unauthorized practice of law. *Turkey Point Prop. Owners' Ass'n, Inc. v. Anderson,* 106 Md.App. 710, 666 A.2d 904 (1995). Similarly, a judgment is void in proceedings where a corporation was not represented by a lawyer. *Id.* A complaint filed in the name of a corporation that has forfeited its corporate charter is a nullity. *Stein v. Smith,* 358 Md. 670, 751 A.2d 504 (2000).

In *Turkey Point,* we held that a non-lawyer's representation of an association rendered the complaint, and the trial proceedings, a nullity. *Id.* at 718-20, 666 A.2d 904. In so holding, we adopted the rationale of other jurisdictions, which have held that:

> Proceedings in a suit by a person not entitled to practice [law] are a nullity.... If the cause has proceeded to judgment, the judgment is void....

*Turkey Point Prop. Owners' Ass'n, Inc.,* 106 Md.App. at 718, 666 A.2d 904. We explained that this

"drastic remedy" was called for by "[t]he totality of the circumstances, including the long history of rules and legislation aimed at preventing the practice of law by non-lawyers[.]" *Id.* at 719, 666 A.2d 904.

In *Stein,* the Court of Appeals held that a complaint filed in the name of a corporation that had forfeited its corporate charter was a nullity. *Stein,* 358 Md. at 675, 751 A.2d 504. The *Stein* Court explained that, "[o]ne of the powers of [the company] that became `inoperative, null, and void' upon forfeiture of its charter was the power to sue." *Id.* at 675, 751 A.2d 504 (citing the Maryland Code provisions governing corporate charters). The Court further observed that:

> There is a strong analogy between the problem in the case before us and the purported filing of an action against a person who is deceased at that time. In *Burket v. Aldridge,* 241 Md. 423, 430, 216 A.2d 910, 913 (1966), we said that "the action filed by Burket against Smith, a few days before the expiration of the three year period from the date of the injuries, had no legal effect. Smith was dead, and an action brought against a dead man is a nullity.".... We perceive no reason why an action purportedly brought by a defunct corporation has any more efficacy than an action brought against a deceased individual defendant.

*Stein,* 358 Md. at 682, 751 A.2d 504.

# B. Unenforceable Judgments

Generally, a party that lacks a required license may not file an action in a 198\*198 Maryland court to enforce rights related to its unlicensed activities. *See, e.g., Harry Berenter, Inc. v. Berman,* 258 Md. 290, 293, 265 A.2d 759 (1970). The Court of Appeals explained that:

> [I]f a statute requiring a license for conducting a trade, business or profession is regulatory in nature for the protection of the public, rather than merely to raise revenue, an unlicensed person will not be given the assistance of the courts in enforcing contracts within the provisions of the regulatory statute because such enforcement is against public policy.

*Id. See also McDaniel v. Baranowski,* 419 Md. 560, 583-87, 19 A.3d 927 (2011) (reversing summary ejectment judgment entered against a tenant and in favor of an unlicensed landlord because "the purpose of the [landlord licensing] statute was to eliminate a perceived harm, rather than to build the public fisc....").

In *McDaniel,* the Court of Appeals concluded that the lack of a license implicated the landlord's "status as a claimant" in Maryland courts, rather than constituting an affirmative defense. *McDaniel,* 419 Md. at 587, 19 A.3d 927. The district court had awarded possession of leased premises to an unlicensed landlord, and entered a money judgment in favor of the landlord for rent and late fees. *McDaniel,* 419 Md. at 567, 19 A.3d 927. On appeal, the Court of Appeals considered the effect of the licensure requirement on the validity of the district court judgment. *Id.* at 574, 19 A.3d 927. The Court noted that the relevant statutory provision contained no explicit requirement that a landlord be licensed in order to maintain an action in court. *Id.* Accordingly, the Court observed that, "whether the landlord must establish his bona fides regarding licensure at the time of filing, as a matter of law, or whether the tenant should plead the lack of a license as an affirmative defense remains an issue." *Id.* The Court ultimately held that licensure impacted the landlord's "status as a claimant" in Maryland courts, rather than constituting an affirmative defense:

Licensure under local ordinances in order to operate rental dwelling units is an integral part of a landlord's status as claimant in those jurisdictions that require licensure. As a result, in order to invoke the facile process of summary ejectment, a landlord in those jurisdictions requiring licensure, must affirmatively plead and demonstrate that he is licensed at the time of the filing of the complaint for summary ejectment in order to initiate the summary ejectment process.

*Id.* at 587, 19 A.3d 927.

## C. The MCALA Licensure Requirement

Maryland law requires a debt collector to obtain a license. *See* MCALA, Md. Code Ann., Bus. Reg. § 7-301(a) ("a person must have a license whenever the person does business as a collection agency in the State."). The MCALA defines a "collection agency" as a "person who engages directly or indirectly in the business of:

... (ii) collecting a consumer claim the person owns, if the claim was in default when the person acquired it." *Id.* at § 7-101(c). "[A] Consumer Debt Purchaser that collects consumer claims through civil litigation is a `collection agency' under Maryland law and required to be licensed as such regardless of whether an attorney representing the Consumer Debt Purchaser in the litigation is a licensed collection agency." Md. State Collection Agency Licensing Bd. Advisory Notice 05-10, May 5, 2010. Acting without a license is also a misdemeanor under Maryland law. *See* MCALA § 7-401(b). LVNV concedes that it was not licensed at the time it filed actions against Dorsey and Finch. Moreover, LVNV seemingly does not dispute that it was required to obtain a license under The MCALA prior to filing actions against Finch and Dorsey.

## D. Lack of MCALA License and Validity of District Court Judgments

It appears to be a question of first impression in Maryland whether a collection agency's failure to obtain a license, as required by the MCALA, renders any judgment entered in favor of an unlicensed collection agency void or voidable. We conclude that a judgment obtained by an unlicensed collection agency is void.

At least one other jurisdiction has considered this issue, and held that judgments entered in favor of an unlicensed debt collection agency are void. *See LVNV Funding, LLC v. Trice,* 352 Ill.Dec. 6, 952 N.E.2d 1232 (Ill.App.2011). There, an intermediate appellate court in Illinois held that judgments obtained by LVNV in Illinois district courts were void because LVNV was unlicensed, as required by the Illinois Collection Agency Act, when it filed the district court actions. *Id.* In so holding, the *Trice* court rejected the trial court's conclusion that the lack of licensure "made the judgment merely voidable[.]" *Id.* at 1233. Rather, the *Trice* court held that the "legislature's criminalization of an unregistered collection agency's collection of a debt establishes an intent to void any judgment entered in favor of an unregistered collection agency." *Id.* at 1234. The *Trice* court also observed that the "Illinois General Assembly adopted legislation to license and regulate collection agencies ... [on the basis that] practice as a collection agency ... affect[s] the public health, safety, and welfare...." *Id.* at 1236.

In reaching its decision, the *Trice* court explained that "[w]e find this case similar to cases in which a person practices law without a license." *Id.* at 1237. Under Illinois law, "[a] complaint drafted by a nonattorney on behalf of a corporation constitutes the unauthorized practice of law rendering the pleading a nullity and any judgment entered on it void." *Id.* (citations omitted). Consequently, the *Trice* court held that "a complaint filed by an unregistered collection agency is similarly a nullity, and any judgment entered on such a complaint is void." *Id.*

Although there is no Maryland case directly on point, the United States District Court for the District of Maryland has held that filing a collection action without a license, as required under the MCALA, constitutes an attempt to "enforce a right... that does not exist." *Hilco, supra,* 765 F.Supp.2d at 732 (applying Maryland law). Similarly, in the context of federal law, the *Hilco* court held that filing a collection action without a license under the MCALA constitutes an "action that cannot legally be taken." *Id.* at 731. In so holding, the *Hilco* court relied upon various cases from other jurisdictions holding that "violations of parallel state laws that mandate licensure by collection agencies" amounted to actions "that cannot legally be taken." *Id.* at 728 (citing *Sibley v. Firstcollect, Inc.,* 913 F.Supp. 469, 471-72 (M.D.La.1995); *Russey v. Rankin,* 911 F.Supp. 1449, 1459 (D.N.M.1995); *Kuhn v. Account Control Tech., Inc.,* 865 F.Supp. 1443, 1452 (D.Nev. 1994)).

In our view, the Maryland precedent on void judgments weighs in favor of adopting the analysis set forth in *Trice.*[8] The definition of a void judgment in Maryland mirrors the definition under Illinois law. *See Smith,* 240 Md. at 474, 214 A.2d 563 (A void judgment "is a mere nullity, which [is] disregarded entirely...."); *see also Trice,* 952 N.E.2d at 1237 ("A void judgment is from its inception a complete nullity and without legal effect."). A judgment is void under both Maryland law and Illinois law if the judgment was obtained by an unlicensed attorney, or by a corporation not represented by an attorney. *See Turkey Point Prop. Owners' Ass'n, Inc.,* 106 Md. App. at 718-20, 666 A.2d 904. The laws of both Maryland and Illinois also require collection agencies to be licensed in order to file collection actions in court, and impose criminal penalties for parties that engage in unlicensed collection activities. See MCALA §§ 4-301(a) and 7-401(b).

Consequently, we adopt the logical and well-reasoned conclusion of *Trice.* Much like a complaint filed by a non-lawyer, "a complaint filed by an unregistered collection agency is a nullity, and any judgment entered on such a complaint is void." *Trice, supra,* 952 N.E.2d at 1236. We are further persuaded by the *Trice* court's rationale that the imposition of criminal penalties for engaging in unlicensed collection activities establishes an intent by the legislature to void any judgment entered in favor of an unregistered collection agency.

As stated within the case: *LVNV FUNDING, LLC v. Trice, 952 NE 2d 1232 - Ill: Appellate Court, 1st*

*Dist., 3rd Div. 2011*

Which states the following:

# **OPINION**

Justice NEVILLE delivered the opinion of the court, with judgment.

¶ 1 When an unregistered collection agency obtains a judgment against a debtor, does the lack of a license make the judgment void, or merely voidable? The trial court here said it made the judgment merely voidable, so that the debtor's failure to raise the issue before entry of the final judgment left him with no recourse. We disagree. We find that our legislature's criminalization of an unregistered collection agency's collection of a debt establishes an intent to void any judgment entered in favor of an unregistered collection agency. Accordingly, we reverse and remand.

# ¶ 7 ANALYSIS

¶ 8 Our supreme court clarified the law pertaining to section 2-1401 motions in *People v. Vincent,* 226 Ill.2d 1, 312 Ill.Dec. 617, 871 N.E.2d 17 (2007). The party seeking relief from a judgment must plead and prove (1) that he had "a defense or claim that would have precluded entry of the judgment in the original action" and (2) that he acted with "diligence in both discovering the defense or claim and presenting the petition." *Vincent,* 226 Ill.2d at 7-8, 312 Ill.Dec. 617, 871 N.E.2d 17. The party opposing the 2-1401 petition may move to dismiss it as insufficient at law, or the party may dispute the factual assertions of the petition. *Vincent,* 226 Ill.2d at 8-9, 312 Ill.Dec. 617, 871 N.E.2d 17. Where the parties dispute a material issue of fact, the trial court should hold an evidentiary hearing before ruling on the petition. *Vincent,* 226 Ill.2d at 9, 312 Ill. Dec. 617, 871 N.E.2d 17. "[W]hen a court enters either a judgment on the pleadings or a dismissal in a section 2-1401 proceeding, that order will be reviewed, on appeal, *de novo.*" *Vincent,* 226 Ill.2d at 18, 312 Ill.Dec. 617, 871 N.E.2d 17.

¶ 9 Here, LVNV moved to dismiss the 2-1401 motion as legally insufficient. See 735 ILCS 5/2-615 (West 2008); *Oliveira* 1235*1235 *v. Amoco Oil Co.,* 201 Ill.2d 134, 147, 267 Ill.Dec. 14, 776 N.E.2d 151 (2002). For purposes of our review of the judgment, we must accept as true all well-pleaded facts in Trice's motion to vacate the judgment. *Oliveira,* 201 Ill.2d at 147, 267 Ill.Dec. 14, 776 N.E.2d 151. We will affirm the dismissal "only where no set of facts can be proved under pleadings which set forth a cause of action entitling the plaintiff to relief." *Bank of Northern Illinois v. Nugent,* 223 Ill.App.3d 1, 9, 165 Ill.Dec. 514, 584 N.E.2d 948 (1991). However, the petition must set forth sufficient facts to show entitlement to the relief sought. *Barham v. Knickrehm,* 277 Ill. App.3d 1034, 1037, 214 Ill.Dec. 721, 661 N.E.2d 1166 (1996).

¶ 10 Trice has adequately alleged that before it filed the lawsuit, LVNV had not registered as a collection agency, as required by the Illinois Collection Agency Act (Act) (225 ILCS 425/14, 14b (West 2008)). But Trice did not raise this issue before the trial court entered a final judgment against him on LVNV's complaint. Trice raises the issue only in a 2-1401 petition for relief from the judgment. Finally, Trice claims that LVNV's failure to register makes the judgment in its favor void, and not merely voidable.

¶ 11 When the trial court enters a void judgment, a party aggrieved by the judgment may attack it in a 2-1401 motion without showing diligence. "[T]he allegation that the judgment or order is void

substitutes for and negates the need to allege a meritorious defense and due diligence." *Sarkissian v. Chicago Board of Education,* 201 Ill.2d 95, 104, 267 Ill.Dec. 58, 776 N.E.2d 195 (2002).

¶ 12 The parties cite us no case in which a court decided whether a violation of the Act rendered a judgment void. Apparently, we must decide the issue as a matter of first impression—despite the fact that the Act has remained in effect since 1974. See 225 ILCS 425/1 (West 2008).

¶ 13 Our supreme court defined void judgments in *Ford Motor Credit Co. v. Sperry,* 214 Ill.2d 371, 379-80, 292 Ill.Dec. 893, 827 N.E.2d 422 (2005), as follows:

"A void order or judgment is, generally, one entered by a court without jurisdiction of the subject matter or the parties, or by a court that lacks the inherent power to make or enter the order involved. [Citations.] A void judgment is from its inception a complete nullity and without legal effect."

In *Ford Motor,* the plaintiff recovered a judgment against the defendant in a proceeding in which the law firm that represented the plaintiff had failed to register with the court as required by Supreme Court Rule 721(c) (Ill.S.Ct. R. 721(c) (eff. Nov. 1, 1984)). All of the attorneys who worked for the law firm had proper Illinois licenses. The trial court held that because the law firm engaged in the unauthorized practice of law, the judgment was void. Our supreme court noted that the appellate court had reached a contrary result under similar facts in *Joseph P. Storto, P.C. v. Becker,* 341 Ill.App.3d 337, 275 Ill.Dec. 153, 792 N.E.2d 384 (2003). Our supreme court summarized the reasoning of *Storto* as follows:

"The *Storto* court observed that although Rule 721(c) requires that professional service corporations register with this court, the rule also lacks civil or criminal penalties for noncompliance. * * * Because Rule 721(c) fails to include civil or criminal liability for the failure to register, the *Storto* court held that this indicated that the registration requirement was not promulgated for the protection of the public safety. * * *

Accordingly, the *Storto* court determined that, because Rule 721(c) was not enacted for the protection of the public, the contractual obligations owed to a professional service corporation law firm which lacked registration under Rule 721(c) could not be voided absent a showing of prejudice resulting from the failure to register." *Ford Motor,* 214 Ill.2d at 386-87, 292 Ill.Dec. 893, 827 N.E.2d 422.

The *Ford* court adopted the reasoning of *Storto. Ford Motor,* 214 Ill.2d at 387, 292 Ill.Dec. 893, 827 N.E.2d 422.

¶ 14 Trice here asks us to treat LVNV's collection efforts, while unregistered, as akin to the

unauthorized practice of law. LVNV argues that its collection efforts have more in common with the practice of law by the unregistered law firm in *Ford Motor.* Courts in Illinois have noted the close relationship between a collection agency's work and the practice of law. Illinois courts have expressly disapproved of acts by which a collection agency has crossed the line into the practice of law in *People v. Securities Discount Corp.,* 361 Ill. 551, 198 N.E. 681 (1935), *Midland Credit Adjustment Co. v. Donnelley,* 219 Ill.App. 271 (1920), and *Smith v. Illinois Adjustment Finance Co.,* 326 Ill.App. 654, 63 N.E.2d 264 (1945). Courts in other jurisdictions have also found that collection agencies have practiced law without a license. See *Iowa Supreme Court Comm'n on Unauthorized Practice of Law v. A-1 Associates, Ltd.,* 623 N.W.2d 803 (Iowa 2001); *Bay County Bar Ass'n v. Finance System, Inc.,* 345 Mich. 434, 76 N.W.2d 23 (1956); *Martinez v. Albuquerque Collection Services, Inc.,* 867 F.Supp. 1495 (D.N.M.1994); *Hospital Credit Exchange v. Shapiro,* 186 Misc. 658, 59 N.Y.S.2d 812 (1946); *Nelson v. Smith,* 107 Utah 382, 154 P.2d 634, 638-39 (1944); *In re Ripley,* 109 Vt. 83, 191 A. 918 (1937); *State ex rel. State Bar of Wisconsin v. Bonded Collections, Inc.,* 36 Wis.2d 643, 154 N.W.2d 250 (1967).


¶ 15 The Illinois General Assembly adopted legislation to license and regulate collection agencies beginning in 1974. Comment, *The Illinois Collection Agency Act,* 1975 U. Ill. L. F. 441, 443 (1975). The Act, as amended, provides:

"The practice as a collection agency by any entity in the State of Illinois is hereby declared to affect the public health, safety and welfare and to be subject to regulation and control in the public interest." 225 ILCS 425/1a (West 2008).

"No collection agency shall operate in this State, directly or indirectly engage in the business of collecting, solicit claims for others, * * * exercise the right to collect, or receive payment for another of any account, bill or other indebtedness, without registering under this Act[.]" 225 ILCS 425/4 (West 2008).

A corporation acts as a collection agency when it " buys accounts, bills or other indebtedness [with recourse] and engages in collecting the same." 225 ILCS 425/3(d) (West 2008). A party who acts as a collection agency without proper registration commits a Class A misdemeanor and must also pay a civil penalty. 225 ILCS 425/4.5, 14, 14b (West 2008).

55

¶ 16 Assuming the truth of the allegations in Trice's section 2-1401 motion, that LVNV had not registered as a collection agency before it sued Trice, LVNV committed a crime when it purchased the debt and sued to collect it. See 225 ILCS 425/3(d), 14 (West 2008). The criminal and civil penalties the Act assigns to LVNV's alleged acts (225 ILCS 425/4.5, 14, 14b (West 2008)) distinguish this case from *Ford Motor.*

¶ 17 The criminal penalties codified in the Act applicable to unregistered collection agencies also distinguish this case from *K. Miller Construction Co. v. McGinnis,* 238 Ill.2d 284, 345 Ill.Dec. 32, 938 N.E.2d 471 (2010), a recent supreme court decision. In *K. Miller,* a home remodeling contractor failed to give his customer a written contract for remodeling work that cost more than $1,000, in violation of a statute. Our supreme court noted that "a statutory violation does not automatically render a contract unenforceable." *Id.* at 294, 938 N.E.2d 471, 345 Ill.Dec. 32. The court found that the contractor could sue for breach of contract. The statute in *K. Miller,* like the rule in *Ford Motor,* assigned no penalty to its violation. Here, on the other hand, the Act expressly forbids collection agencies, like LVNV, from exercising the right to collect any bill before the agency has registered as a collection agency, and the Act expressly makes the violation a crime.

¶ 18 We find this case similar to cases in which a person practices law without a license. Courts have authority to impose penalties for contempt on anyone who practices law without a license. 705 ILCS 205/1 (West 2008). Courts may similarly penalize anyone who acts as a collection agency without registering. See 225 ILCS 425/4.5, 14, 14b (West 2008). A court made the following statement about a complaint drafted by an unlicensed attorney:

"A complaint drafted by a non-attorney on behalf of a corporation constitutes the unauthorized practice of law rendering the pleading a nullity and any judgment entered on it void. [Citation.] An attorney's subsequent appearance and adoption of a complaint improperly drafted by a non-attorney does not absolve the drafter of the unauthorized practice of law." *Edwards v. City of Henry,* 385 Ill.App.3d 1026, 1036, 338 Ill.Dec. 452, 924 N.E.2d 978 (2008).

The rule "operates to void the judgment even where the lay agent merely files the complaint over his own signature, and all subsequent court appearances are made by a duly licensed attorney." *Housing Authority v. Tonsul,* 115 Ill.App.3d 739, 740, 71 Ill.Dec. 369, 450 N.E.2d 1248 (1983).

¶ 19 We hold that a complaint filed by an unregistered collection agency is similarly a nullity, and any judgment entered on such a complaint is void. The subsequent registration of the collection agency does not absolve the agency of the crime of debt collection by an unregistered collection agency, and it does not validate a judgment entered on the void complaint. The trial court lacks authority to enter or enforce a judgment in LVNV's favor on a complaint LVNV filed in violation of the Act, because to do so would abet LVNV in the commission of the crime of debt collection by an unregistered collection agency. 225 ILCS 425/4, 14, 14b (West 2008).

¶ 20 We find that Trice has alleged adequate grounds for vacating the judgment entered in favor of LVNV. If LVNV disputes the accuracy of Trice's factual allegations, the trial court should hold an evidentiary hearing on the issue before deciding whether to grant Trice's motion to vacate the judgment.

# ¶ 23 CONCLUSION

¶ 24 If LVNV had not registered before it filed the complaint against Trice, it committed the crime of engaging in debt collection without proper registration. The crime, if proven, makes void the judgment LVNV obtained against Trice. Accordingly, we reverse and remand for further proceedings in accord with this opinion.

¶ 25 Reversed and remanded with directions.

Presiding Justice QUINN and Justice MURPHY concurred in the opinion and judgment.

As stated within the case: *Gaetano v. Payco of Wisconsin, Inc. 774 F. Supp. 1404 (D. Conn. 1990) Citing: [*Granting summary judgment to plaintiff on her licensing-related claim under § 1692e(5) as the *unlicensed debt collector* instructed plaintiff that "we are entitled to use, and we intend to use, all approved means at our command to collect *debts*"]

…....requires that the *debt collector* "disclose clearly in all communications made to collect a *debt* or to obtain information about a consumer, that the *debt collector* is attempting to collect a *debt* and that any....

…...thereof, the *debt* will be assumed to be valid by the *debt collector*; (4) a statement that if the consumer notifies the *debt collector* in writing within the thirty-day period that the *debt*, or any portion....

As stated within the case*: Sibley v. Firstcollect, Inc.913 F. Supp. 469 (M.D. La. 1995)* Citing:

[Finding violation of § 1692e(5) when *unlicensed debt collector* attempted to collect a *debt* from

consumer]

…..was an *unlicensed debt collector* in violation of Louisiana Revised Statutes 9:3576.8, which requires that all *debt collectors* be licensed with the state of Louisiana prior to engaging in any *debt* collecting......

…...Firstcollect was not a licensed "*debt collector*" as required by Louisiana Revised Statutes 9:3576.8. Firstcollect contends that, even if the failure to be licensed as a "*debt collector*" under Louisiana law is a......

69. Plaintiff seeks injunctive relief to prevent the continuation and recurrence of the challenged conduct, and to assure uniform standards by which Defendants will not attempt to bypass spoliation so that Defendants will provide proper documentation of an explanation as to why the proper, representative documentation is not available to both the Plaintiff, Jean Shim and the courts as required under *Rule* 6:6-3(a). Under *Rule* 6:6-3(a), the creditor must set forth the previous balance, and identify all transactions and credits, as well as the periodic rates, the balance on which the finance charge is computed, other charges, if any, the closing date of the billing cycle, and the new balance.

As stated in court case: *[ LVNV FUNDING, LLC v. Colvell 22 A. 3d 125, 421 NJ Super. 1- NJ: Appellate Div., 2011]*

*Rule* 6:6-3(a), the creditor must set forth the previous balance, and identify all transactions and credits, as well as the periodic rates, the balance on which the finance charge is computed, other charges, if any, the closing date of the billing cycle, and the new balance.

Defendant argues that LVNV's computer generated report did not sufficiently meet the requirement set forth in *Rule* 6:6-3 governing default judgments because it does not contain any identification of transactions or credits in support of the balance listed. Although the Rule does not generally apply in a summary judgment situation, we agree with the trial court that *Rule* 6:6-3(a) provides a guide to the proofs necessary to grant summary judgment in a credit card collection matter.

*Rule* 6:6-3(a) provides required forms of proof, consistent with federal regulations for credit card account periodic billing statements. *See* 15 *U.S.C.* § 1637(b); 12 *C.F.R.* § 226.7; *see also* Pressler & Verniero, *Current N.J. Court Rules,* comment on *R.* 6:6-3(a) (2011). *Rule* 6:6-3(a) provides, in relevant part:

> If the plaintiff's claim against a defendant is for a sum certain or for a sum that can by computation be made certain, the clerk on request of the plaintiff and on affidavit setting forth a particular statement of the items of the claim, the amounts and dates, the calculated amount of interest, the payments or credits, if any, the net amount due, and the name of the original creditor if the claim was acquired by assignment, shall enter judgment for the net amount and costs against the defendant[.]

. . . .

> If plaintiff's records are maintained electronically and the claim is founded on an open-end credit plan as defined in 15 *U.S.C.* § 1602(i) and 12 *C.F.R.* § 226.2(a)(20), a copy of the periodic statement for the last billing cycle as prescribed by 15 *U.S.C.* § 1637(b) and 12 *C.F.R.* § 226.7, or a computer-generated report setting forth the previous balance, identification of transactions and credits, if any, periodic rates, balance on which the finance charge is computed, the amount of the finance charge, the annual percentage rate, other charges, if any, the closing date of the billing cycle, and the new balance, if attached to the affidavit, shall be sufficient to support the entry of judgment.

In support of its motion for summary judgment, LVNV submitted a certification of proof and ownership of defendant's account, as well as a computer-generated report. An authorized representative of LVNV certified that she had personal knowledge of LVNV's "creation and maintenance of its normal business records, including computer records of its credit accounts," and that Citibank extended credit to defendant on March 1, 1998, and subsequently sold defendant's account to LVNV on January 10, 2008. The computer-generated statement contained defendant's name, address, account number, previous balance and new balance. The statement indicated that defendant did not have any credits and that the finance charge percentage rate, annual percentage rate and other fees were zero. The only transaction listed on the statement was LVNV's purchase of the account. Where the statement provided for the closing date of the billing cycle, it read, "Not Applicable."

59

The computer-generated statement does not comply with *Rule* 6:6-3(a) because it does not specify any transactions comprising the debt owed by defendant. Additionally, and incredibly, a zero "Finance Charge Percentage Rate" and a zero "Annual Percentage Rate" are reflected. The "Closing Date of Billing Cycle" is described as "Not Applicable."

Although defendant does not allege that she did not use this card or hold this account, LVNV does not meet the requirements set forth in federal law and repeated in *Rule* 6:6-3(a). To collect on a revolving credit card debt, LVNV is required to provide the transactions for which payment has not been made, any payments that have been made, the annual percentage and finance charge percentage rates and the billing cycle information. *R.* 6:6-3(a). Here, LVNV did not provide any documentation regarding the original MasterCard transactions by defendant other than the account number and the alleged balance.

Reversed.

70. Accordingly, to state a claim for relief under the FDCPA, Plaintiff must allege that (1) Defendants violated the Collection Agencies Act, N.J.S.A. 45:18-1, *et seq* by failing to obtain the required collection license, and (2) in violating the Collection Agencies Act, N.J.S.A. 45:18-1, *et seq* , Defendants engaged in conduct that also violated the FDCPA, because of failure to obtain the required collection license to do so in the state of New Jersey.

Violations of a state collection licensing law such as the Collection Agencies Act, N.J.S.A. 45:18-1, *et seq* may support a claim under the FDCPA.

*See, e.g., **Bradshaw v. Hilco Receivables, LLC, 765 F.Supp.2d 719, 726–27 (D.Md.2011)*** (Bennett, J.) (holding that a violation of the MCALA may support a cause of action under the FDCPA, including when an unlicensed debt purchaser files lawsuits to collect on debt in default, as a threat to take an action that cannot legally be taken); ***Hauk, 749 F.Supp.2d at 366–67*** (Blake, J.) (indicating that a debt collector's failure to register under state collection law is pertinent to whether it used unfair or unconscionable means to collect a debt); *see also **LeBlanc v. Unifund CCR Partners, 601 F.3d 1185,***

*1200 (11th Cir.2010)* (holding that defendant's "lack of registration with the State of Florida is an appropriate consideration in deciding whether [defendant's] 'means' of collection were 'unfair or unconscionable' ").

In *Bradshaw, 765 F.Supp.2d at 726,* the court said: "MCALA is clear on its face—it requires that any person who directly or indirectly engages in collecting debts must be licensed." Courts in this District have had occasion to consider the MCALA in several cases.

In *Bradshaw,* the defendant purchased debts from creditors when the debtors were in default, and pursued litigation in Maryland against the debtors to collect on those debts. The court found that the defendant qualified as a "collection agency" by pursuing litigation to collect the debts, and therefore violated the MCALA by failing to obtain a license. *Id.* at 726–27;*see also Hauk, 749 F.Supp.2d at 366–67* (treating defendant as a "collection agency" because it purchased consumer debts in default, and filed lawsuits in Maryland to collect on those debts).

In *Winemiller, supra, 2011 WL 1457749 at *1,* the defendants were "businesses that purchase[d] consumer debt from other creditors at a substantial discount and then attempt[ed] to collect on that debt, either directly or through intermediaries," including through "the filing of lawsuits in Maryland state court." The defendants argued that the MCALA did not apply to their conduct because they "place[d] the purchased debts with a licensed collection agency to collect or file suit on their behalf." *Id.* at *4. The court rejected this argument, concluding: "Plaintiffs may still be able to hold Defendants liable even if they hired a third-party to pursue the debt collection claims." *Id.* at *5. The court also noted that the "MCALA does not distinguish between collection agencies that use different mechanisms to collect debt." *Id.* at *4. Rather, "[i]t targets all persons and entities that do business as collection agencies." *Id.*

As *Bradshaw, Hauk,* and *Winemiller* make clear, a "passive" debt purchaser qualifies as a collection agency by pursuing collection activities, even through a third party, such as an attorney. *See Bradshaw, 765 F.Supp.2d at 726–27;Hauk, 749 F.Supp.2d at 366–67;Winemiller, 2011 WL 1457749 at *4.* Furthermore, as Judge Bennett noted in *Winemiller,* the "MCALA does not distinguish between

61

collection agencies that use different mechanisms to collect debt." 2011 WL 1457749 at *4. Instead, "[i]t targets all persons and entities that do business as collection agencies." *Id.*

The debt purchaser provision specifically targeted entities that, by virtue of a statutory loophole in the MCALA, "enter[ed] into purchase agreements to collect delinquent consumer debt rather than acting as an agent for the original creditor," and then "collect[ed] consumer debt in the State without complying with any licensing or bonding requirement." *Bradshaw,* 765 F.Supp.2d at 726 (quoting H.B. 1324, 2007 Leg. Sess., S. Fin. Comm. (Md. 2007)). To close that loophole, the MCALA now requires licensing of entities that " 'purchase delinquent consumer debt' " and then " 'collect from consumers like other collection agencies who act on behalf of original creditors.' " *Bradshaw,* 765 F.Supp.2d at 726 (quoting H.B. 1324, 2007 Leg. Sess., S. Fin. Comm. (Md. 2007)). The "debt purchasers" provision was implemented to " 'extend the purview of the [Maryland] State Collection Licensing Board to include persons who collect consumer claims acquired when claims were in default.' " *Bradshaw,* 765 F.Supp.2d at 726 (quoting H.B. 1324, 2007 Leg. Sess., S. Fin. Comm. (Md. 2007)).


71. Plaintiff, generally, alleges a violation of § 1692e, which prohibits the use of "any false, deceptive, or misleading representations or means in connection with the collection of any debt." 15 U.S.C. § 1692e and 15 U.S.C. § 1692e(5), which prohibits threatening "to take any action that cannot legally be taken." In addition, Plaintiff alleges that Defendants' actions violate two specific subsections of § 1692, namely, subsections § 1692e(2)(A) and § 1692e(10). The former bars debt collectors from misrepresenting the "legal status of any debt." The latter bars the "use of any false representation or deceptive means to collect or attempt to collect a debt...." "Courts have long held that after finding a valid claim under a more specific subsection of § 1692e ... further analysis under § 1692e(10) is `somewhat duplicative.'" *Gervais v. Riddle & Associates, P.C.,* 479 F.Supp.2d 270, 276-77 (D.Conn.2007). Finally, Plaintiff alleges that Defendants' actions violate § 1692f(1), in that HILLCREST DAVIDSON AND ASSOCIATES attempted to collect a debt that "was not expressly authorized by the agreement creating the debt or permitted by law."

*See Marcinczyk v. State of New Jersey Police Training, 203 N.J. 586, 594 (2010) (quoting Frank Briscoe Co. v. Travelers Indem. Co., 65 F.Supp.2d 285, 312 (D.N.J.1999)).* Simply put,

"contractual provisions that tend to injure the public in some way will not be enforced." *Id. (quoting Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358, 403-04, 161 A.2d 69 (1960)) (citation omitted).*
While not all violations of a statute are ipso facto void for public policy, see Williston at § 12:4*; Exit A Plus Realty v. Zuniga, 395 N.J.Super. 655, 664, 930 A.2d 491 (App.Div.2007)* (refusing to invalidate a contract, reasoning "if the Legislature had wanted to invalidate agreements entered in contravention of N.J.S.A. 45:15-17, it could have done so explicitly ...."), "[l]egislation intended to secure general objectives of public policy or morals cannot be circumvented by private agreements." *General Motors Acceptance Corp. v. Cahill, 375 N.J.Super. 553, 566, 868 A.2d 1078 (App.Div.2005).* Thus, where the public policy violated by the contract "is to secure general objects of policy or morals," as opposed to a statutory provision designed for the benefit of individuals, courts are more likely to hold the offending contract void. Id.

Turning to Plaintiff's substantive allegations, each of the alleged FDCPA violations is predicated upon the notion that HILLCREST DAVIDSON AND ASSOCIATES 's purchase of Plaintiff's debt was invalid, that HILLCREST DAVIDSON AND ASSOCIATES cannot act as a debt collector, and, thus, HILLCREST DAVIDSON AND ASSOCIATES are not the true owner of the debt under New Jersey law.

72. Plaintiff also seeks restitution for damages, including, but not limited to, costs incurred, collections made, vacating of judgments improperly achieved, statutory damages, punitive damages, damages for violations of the Federal FDCPA in the amount of [$1000.00] One Thousand Dollars,

damages for violations of the New Jersey Fair Debt Collections Practices Act in the amount of
[$ 500.00] Five-Hundred Dollars, attorney and expert fees and costs, and whatever other relief this
Court may deem appropriate under the law.

**WHEREFORE,** Plaintiff / Class demands judgment against Defendants as follows:

(a) Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff
as Class representative.

(b) Awarding Plaintiff and the Class statutory damages;

(c) Awarding Plaintiff and the Class actual damages;

(d) Awarding per-judgment interest;

(e) Awarding post-judgment interest.

(f) Class Declaratory Judgment and Injunctive Relief," seeks a declaration that defendants
unlawfully engaged in debt collection practices. In addition, Plaintiff seeks to enjoin
Defendants' allegedly unlawful conduct, and requests disgorgement of "all amounts that each
has obtained while acting illegally as a debt collection agency without a license within the state
of New Jersey.

(g) Awarding Plaintiff and the Class an official court order to have all negative credit report
marking removed from all three CRA's. *[For example: Protect Your Home*, HILLCREST
DAVIDSON AND ASSOCIATES's negative credit report marking removed from, Trans Union,
LLC, Experian and Equifax.]

(h) Awarding Plaintiff costs of this Action, including reasonable attorneys' fees, expert fees and

expenses; and

(i) Awarding Plaintiff and the Class such other and further relief as the Court may deem just and proper.

Dated: November ___7___th, 2018          X: _____

ALEXANDER GUZMAN
99 Oak Street
Avenel, New Jersey 07001 -1850
Telephone: (908) - 868 – 3368
Plaintiff pro -se

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby requests a trial by jury on

all issues so triable.

_____

ALEXANDER GUZMAN
99 Oak Street
Avenel, New Jersey 07001 -1850
Telephone: (908) - 868 – 3368

Plaintiff pro -se

65